OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 "As every practitioner knows, the problems of enforcing a support order could fill a book” (Besharov, Introductory Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act art 4, at 5). The present chapter in the sad volume already filled by the parties before us — parents of five minor children — centers on whether respondent father’s failure to pay support was established to be willful, justifying Family Court’s order of commitment for contempt. We conclude that the record supports Family Court’s determination and therefore reverse the Appellate Division order that overturned it.
 

 The facts of this case begin with the parties’ divorce on May 16, 1990, by a final decree incorporating (but not merging) a May 7 separation agreement. The agreement provided that respondent — a self-employed certified public accountant— would pay petitioner child support of $225 per week and maintenance of $375 per week for 10 years, with maintenance decreasing after that time. As the ensuing recitation shows, the three years that followed the parties’ divorce were marked
 
 *66
 
 by petitioner’s persistent efforts to enforce the financial provisions of the separation agreement.
 

 Barely three months after the divorce, on August 31, 1990, petitioner first sought enforcement of respondent’s obligation and he countered with a petition for modification. Before the year was out, on December 11, 1990, petitioner filed her
 
 first violation petition,
 
 which resulted in a decision and order dated March 13, 1991 granting petitioner judgment in the amount of arrears ($13,300), directing no change in the support obligation, and "reluctantly” concluding that respondent’s violation was not willful.
 

 After a
 
 second violation petition
 
 filed the following month, the parties on November 8, 1991 entered into a stipulation in open court reducing maintenance to $250 per week (with the $125 difference accruing as arrears until Dec. 1, 1993), while continuing child support at $225 per week. Arrears as of November 8, 1991 totaled $13,080.
 

 Weeks later, on January 22, 1992, petitioner filed yet a
 
 third violation petition
 
 and respondent cross-petitioned for downward modification of the support obligation. Respondent asserted his inability to pay because of a decline in income resulting in his "dire financial condition.” He also counterclaimed that petitioner was in better financial circumstances than he because she was gainfully employed and "living with a male person who has a substantial income” — and indeed that since 1991, they were holding themselves out as husband and wife, thereby vitiating the maintenance obligation. Respondent complained that deductions from his business checking account by reason of petitioner’s executions were impairing the cash flow of his business.
 

 Before the Hearing Examiner some months later, respondent produced a 33-page schedule of weekly income and expenses for the period from September 29, 1991 to May 9, 1992, which he had prepared especially for the hearing. The schedule showed income for the seven-month period of $70,584 and expenses of $83,589 ($53,624 business and $29,965 personal expenses). Respondent submitted no substantiating documentation and no tax return for the year, claiming he had filed no tax return.
 

 Respondent testified that he had additionally received some loans and gifts not reflected on the schedule. He further testified that he maintained no separate business or personal bank accounts and no checking account in his own name (in
 
 *67
 
 his words, "it wouldn’t stay there very long”) but deposited all his income in an account in the name of his current wife, who worked periodically for him and had no independent income.
 

 Between the effective date of the November 8, 1991 stipulation and the close of evidence, respondent made less than half of the agreed-upon payments. Arrears grew by $8,425, reaching a total of $21,505.
 

 Based on this evidence, the Hearing Examiner concluded that respondent’s violation was willful, characterizing his attempts to explain any changes in his situation since the November 8 in-court stipulation as "pathetic.” The Hearing Examiner found that respondent "presented no credible reason to overcome the presumption that nonpayment creates;” noted that he was a certified public accountant $21,505 in arrears who had stipulated to the disputed obligations; and directed respondent to appear before Family Court on July 17, 1992, for confirmation and sentencing.
 

 On respondent’s cross petition to modify the support order, petitioner testified that she was an apprentice barber earning $300 to $400 per month and that her financial circumstances had not changed, but that she had been receiving approximately $200 in monthly rent. The Hearing Examiner found that respondent had "failed to present any proof that his financial condition had worsened since the November 8, 1991 stipulation.” Although respondent claimed that he was unaware of petitioner’s receipt of rent, the Hearing Examiner noted that such fact had existed when the stipulation was made and he refused to modify the order.
 

 On August 7, 1992, Family Court confirmed the Hearing Examiner’s finding of willful violation, held respondent in contempt, and sentenced him to 60 days in the Saratoga County Jail. Sentence was suspended, however, on condition that respondent make payments in accordance with the stipulation.
 

 Petitioner subsequently filed a
 
 fourth violation petition,
 
 along with an affidavit of the Supervisor of the Support Collection Unit dated December 16, 1992, stating that respondent was in arrears for $3,325 since the August 7 determination.
 

 In a proceeding to establish respondent’s violation of the condition of his suspended sentence, Family Court confirmed the finding of willful violation, concluding from its own review of the record that there was "insufficient evidence to excuse or
 
 *68
 
 justify the Respondent’s failure to honor his support obligations and that the Hearing Examiner’s determination, dated June 5, 1992, that the Respondent was in wilful violation of his support obligations should not be disturbed.” On the issues raised by the cross petition, Family Court held that respondent had failed to submit competent evidence either justifying a downward reduction in his support obligation or establishing that petitioner was holding herself out as another person’s spouse.
 

 On May 7, 1993 — the precise three-year anniversary of the parties’ separation agreement — Family Court ordered respondent’s suspended sentence revoked and committed him to the jail for a term of 60 days, or until he purged himself by payment of arrearages totaling $23,880.
 

 The Appellate Division, one Justice dissenting, modified on the law by reversing the finding of contempt and order of commitment. The court held that, by reference to a "presumption” arising from nonpayment, the Hearing Examiner applied the wrong standard of proof and that respondent had sufficiently shown his inability to pay. According to the Appellate Division, "Family Court never found that respondent was financially capable and willfully failed to make the required payment.” (207 AD2d 637, 638.) We now reverse and reinstate Family Court’s order.
 

 Analysis
 

 Despite the extended factual scenario, the legal issue before us is a straightforward one: did petitioner sustain her burden of proof? Petitioner agrees that the burden of proof is hers to sustain, and that a finding of willful violation on which a person may be incarcerated requires clear and convincing evidence (an issue this Court has yet to determine).
 

 The answer to the question posed begins with the relevant sections of the Family Court Act. As provided in section 454 (3), if a respondent is brought before court for failure to obey a lawful support order and, after hearing, the court is satisfied by competent proof that respondent indeed failed to obey such order, the court may "commit the respondent to jail for a term not to exceed six months”, if the failure was willful. Willfulness requires proof of both the ability to pay support and the failure to do so (Family Ct Act § 455 [5]).
 

 A respondent is prima facie presumed in a hearing under section 454 to have sufficient means to support his or her
 
 *69
 
 spouse and children under the age of 21 (Family Ct Act § 437). For purposes of section 454, moreover, failure to pay support as ordered itself constitutes "prima facie evidence of a willful violation” (Family Ct Act § 454 [3] [a]). Thus, proof that respondent has failed to pay support as ordered alone establishes petitioner’s direct case of willful violation, shifting to respondent the burden of going forward
 
 (see,
 
 Besharov, Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 454, at 388).
 

 Respondent makes much of the Hearing Examiner’s reference to a "presumption” of willfulness arising out of nonpayment, a word that troubled the Appellate Division as well. Whatever the fine distinctions among the various categories of mandatory and permissive presumptions (dubbed "the slipperiest member of the family of legal terms” in 2 McCormick, Evidence § 342, at 449 [4th ed 1992]), without question Family Court Act § 454 (3) (a) speaks of
 
 prima facie evidence
 
 of a willful violation, not a
 
 presumption.
 
 Although the word "presumption” should not have been used, the Hearing Examiner’s inappropriate reference not only was immaterial in the context of his entire decision (he characterized respondent’s showing as "pathetic”) but was also rendered thoroughly inconsequential by Family Court’s own independent review of the record in light of the statute. We conclude that Family Court correctly applied the statute.
 

 Petitioner undisputedly presented prima facie evidence of the willful violation of a lawful support order. The testimony of the Support Collection Unit Supervisor that from November 15, 1991 (the effective date of the November 8 open-court stipulation) to the hearing date June 3, 1992, respondent had made only 11 of the nearly 32 payments due satisfied the requirement for competent proof of nonpayment. At that point, the burden of going forward shifted to respondent to rebut petitioner’s prima facie evidence of a willful violation
 
 (see, Matter of Porcelain v Porcelain,
 
 94 Misc 2d 891;
 
 see also,
 
 Richardson, Evidence §§ 95, 96, at 72 [Prince 10th ed]).
 

 The parties differ on whether respondent satisfied this burden. Respondent urges that he did, and that the failing was petitioner’s, in the words of the Appellate Division, "to counter with affirmative proof of respondent’s financial ability to meet his support obligation” (207 AD2d, at 638). We agree with petitioner that respondent’s burden was not satisfied.
 

 The burden of going forward required respondent to offer
 
 *70
 
 some competent, credible evidence of his inability to make the required payments
 
 (see,
 
 2 McCormick, Evidence § 338, at 436 [4th ed 1992]; 9 Wigmore, Evidence § 2487, at 294 [Chadbourn rev 1981]). All that respondent showed, however, was that he had the ability to meet his support obligation — he acknowledged income in excess of $70,000 for a seven-month period— and that he spent, indeed overspent, his money on other things. As the Appellate Division dissenter observed, "respondent showed nothing other than the manner in which he chose to spend his substantial income during the period in question” (207 AD2d, at 639). A showing that respondent simply exhausted his funds, with no credible evidence indicating the necessity for placing his alleged expenses ahead of support payments to his former spouse and five children, did nothing to satisfy his burden of going forward on the issue of financial inability
 
 (see, Matter of Department of Social Servs. v Hillock,
 
 96 AD2d 625 [evidence that respondent had income during the period and that he used that income to pay other debts is evidence of willful violation of the court order of support]).
 

 Overlooked as well by the Appellate Division was the fact that, in open court, respondent had agreed to pay the amounts in issue. In determining whether petitioner satisfied her burden of proof, Family Court could surely have considered that respondent had the ability to pay reduced sums he represented to the court he would pay
 
 (see, Matter of Harp v McCann,
 
 97 AD2d 868, 869 [respondent’s agreement to fund child’s education was subject to statutory presumption that he had sufficient means to pay]). Family Court was entitled to credit as well that respondent almost from Day One had defaulted on agreed-upon payments provided in the separation agreement resulting in a March 1991 judgment for arrearages; that he failed to meet reduced agreed-upon payments later in the year; and that he again failed to meet his commitment after sentence had been suspended in August on condition that he make the payments.
 

 Family Court therefore correctly determined that respondent failed to meet his burden of going forward, and that petitioner sustained her burden of proving a willful violation justifying the finding of contempt and order of commitment.
 

 Finally, in support of affirmance of the Appellate Division order respondent urges that Family Court could not find him in contempt for failing to make required payments unless
 
 *71
 
 it first concluded that there was no other way of enforcing the order of support. Respondent’s argument rests on Domestic Relations Law § 245 which requires Supreme Court to consider alternative means of enforcing a support order before holding the defaulting party in contempt. The flaw in the argument that Family Court should have no greater authority is that the two statutes are different. Unlike Domestic Relations Law § 245, Family Court Act § 454 explicitly allows the court a choice of probation or jail, without requiring that the court consider alternative enforcement measures.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the order of the Family Court, Saratoga County, granting petitioner’s application to hold respondent in contempt, reinstated.
 

 Judges Simons, Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order reversed, etc.