■ MICHELE FIEDLER, Respondent, v DAVID FIEDLER, Appellant. [646 NYS2d 839] —In an action for a divorce and ancillary relief, the defendant husband appeals (1) from an order of the Supreme Court, Nassau County (Goldstein, J.), dated April 19, 1994, which granted the plaintiff wife's renewed motion to hold the defendant husband in contempt of court for failure to comply with a pendente lite order of support, (2) from an order of the same court, dated June 13, 1994, which denied the defendant husband's motion which was, in effect, to reargue the plaintiff wife's renewed motion, (3) as limited by his brief, from stated portions of a judgment of the same court, dated August 5, 1994, which, after a nonjury trial, *inter alia,* awarded the plaintiff wife maintenance and child support and equitably distributed the parties' property, and (4) from an order of commitment of the same court, dated August 15, 1994.

Ordered that the appeal from the order dated June 13, 1994, is dismissed, as no appeal lies from an order denying reargument; and it is further,

Ordered that the appeal from the order dated August 15, 1994, is dismissed as academic; and it is further,

Ordered that the order dated April 19, 1994, is affirmed; and it is further,

Ordered that the judgment is affirmed insofar as appealed from; and it is further,

Ordered that the plaintiff wife is awarded one bill of costs.

The record supports the Supreme Court's determination that the husband willfully violated the provisions of a pendente lite order of support (*see,* Domestic Relations Law § 245; *see, e.g., Richter v Richter,* 156 AD2d 653; *see also, Matter of Powers v Powers,* 86 NY2d 63). Contrary to the husband's contentions, the Supreme Court did not apply an improper standard nor did it err in imputing income to him (*see, e.g., Matter of Ladd v Suffolk County Dept. of Social Servs.,* 199 AD2d 393).

Inasmuch as it appears that the husband purged himself of contempt and was not incarcerated, his appeal from the order of commitment dated August 15, 1994, is dismissed as academic (*see, Federal Deposit Ins. Corp. v Wolkoff,* 209 AD2d 469; *cf., Matter of Bickwid v Deutsch,* 87 NY2d 862). In any event, we conclude that the court did not err in determining, under the circumstances of this case, that incarceration was an ap-

propriate remedy unless the husband purged himself of the contempt by providing sufficient funds to prevent foreclosure on the marital home.

We find no basis in this record to disturb the Supreme Court's distribution of the marital assets. The parties' main assets consisted of six diamonds and the marital home. The marital home was purchased in 1976 with $50,000, which was a gift to the parties from the husband's grandfather. The wife was awarded exclusive occupancy of the marital home until the parties' youngest child reaches age 18 in the year 2003, at which time the property is to be sold and the proceeds divided, 60% to the wife and 40% to the husband. The court divided the value of the diamonds equally between the parties.

In distributing the marital assets, the court considered the relevant factors in Domestic Relations Law § 236 (B) (5) (d), including the length of the marriage (25 years), the husband's role as principal earner, his superior earning potential, the wife's role as a homemaker for most of the marriage, and her need as the custodial parent to occupy the marital home (*see, Kaplinksy v Kaplinksy*, 198 AD2d 212; *Palmer v Palmer*, 156 AD2d 651).

Based on these factors, we find no merit to the husband's contention that the proceeds of the sale of the marital home should be distributed equally. The wife will be responsible for the mortgage payments and upkeep of the marital home until it is sold. In addition, the court noted that there was no evidence that the wife benefitted from a $200,000 home equity loan the husband obtained in 1987 which was secured by one of the mortgages on the marital premises (*see, e.g., Brodsky v Brodsky*, 214 AD2d 599). The husband testified that he used $175,000 of those funds to meet a trading margin call in connection with his securities business, which he claimed was worthless by 1988.

We decline to disturb the court's determination that the husband should be solely responsible for tax liabilities of about $177,000 which were primarily incurred through his investments in questionable tax shelters. In addition to the fact that the husband's future financial circumstances are much more favorable than the wife's because of his earning potential, the court concluded that the husband's questionable investments without input from the wife amounted to the dissipation of marital assets (*see,* Domestic Relations Law § 236 [B] [5] [d] [11]).

Finally, we decline to disturb the court's determinations regarding maintenance, child support, and attorney's fees,

particularly in view of the evidence regarding the parties' lifestyle prior to commencement of the divorce action, and the court's finding that the husband was not forthright about his finances. O'Brien, J. P., Sullivan and Joy, JJ., concur.

McGinity, J., concurs in part and dissents in part and votes to modify the judgment, on the law and as an exercise of discretion, by (1) deleting from the ninth decretal paragraph the words "[P]laintiff shall receive sixty percent (60%) of the net proceeds of sale and the defendant shall receive forty percent (40%) of the net proceeds of sale" and substituting therefor the following: "the plaintiff and the defendant shall each receive fifty percent (50%) of the net proceeds of the sale", and (2) deleting from the ninth decretal paragraph all language beginning with "Any unsatisfied liens" and ending with "former marital residence" and substituting therefor the following: "The plaintiff and the defendant shall each pay 50% of any unsatisfied liens resulting from the parties' joint tax liabilities from the proceeds of the sale", with the following memorandum:

The trial court, in setting forth the proportionate distribution of marital assets, directed that upon the sale of the parties' marital residence, the plaintiff shall receive 60% of the net proceeds of the sale and the defendant 40%. The court further directed that any unsatisfied liens resulting from the parties' outstanding tax liability of $177,718 shall be satisfied out of the defendant's share of the net proceeds of the sale.

In my view, there should be an equal distribution of the net proceeds of the sale between the parties as well as an equal sharing of the parties' outstanding tax liability. Although the tax liability may have been generated by the defendant's investments in questionable tax shelters, these investments do not constitute the wasteful dissipation of marital assets warranting a distribution of other than 50% of the proceeds of the sale of the marital residence to each party. The record clearly demonstrates that the parties enjoyed a very comfortable lifestyle during the course of the marriage. The tax shelters produced additional spendable income which the plaintiff enjoyed and therefore she should participate in the losses on an equal basis. For the same reason, there should be an equal distribution of the net proceeds of the sale of the marital residence which, when purchased, was financed principally through a gift from the defendant's grandfather.