Matter of Evans v Grossman (2004 NY Slip Op 51166(U))

[*1]

Matter of Evans v Grossman

2004 NY Slip Op 51166(U)

Decided on June 14, 2004

Family Court, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 14, 2004

Family Court, New York County
In the Matter of a Proceeding for Support under 
 Article 4 of the Family Court Act MILDRED EVANS, Petitioner,
against
SEMONE GROSSMAN, Respondent.
P-03876/82C

Helen C. Sturm, J.
The parties are the parents of Semone Christina Grossman (hereinafter "Christina"), a young woman who reached and exceeded the age of twenty-one during the pendency of these proceedings. In November 1996, pursuant to a stipulation entered by the parties, the Court entered a modified order of support which required, inter alia, that respondent pay $48,000 support per year until the subject child started her college education and $53,000 per year during the period that she attended college. This agreement was made subject to a number of conditions. The interpretation of the conditions of the 1996 order, and whether or not they were self-[*2]executing, are the gravamen of the instant violation petition filed by petitioner on March 21, 2002 and decided by Support Magistrate Schiraldi Stein on January 22, 2004 after extensive proceedings.
Procedural History
 It is uncontested that the subject child withdrew from her studies at Roger Williams University in the spring semester of her freshman year ostensibly because she had found a bald patch on her scalp. When respondent became aware of the child's absence from school, he had his counsel notify petitioner that he felt the support agreement was no longer in effect. Respondent continued to make payments at the $48,000 per year level until the child reached age twenty-one on September 11, 2002 whereupon he terminated payments.
Petitioner filed a violation petition on or about March 21, 2002 and argued that respondent's unilateral invocation of one of the conditions of the 1996 order was inappropriate self-help and contrary to the entire scheme of the Family Court Act's support section. Petitioner sought a finding that respondent's failure to pay support at the higher rate and his eventual termination of payment were willful violations of the order. Petitioner alleged that respondent cynically used the child's unfortunate medical condition as a pretext to evade his obligations. 
Respondent countered that the child's withdrawal from school was actually motivated by her poor academic performance and alleged that Christina's true goal was to have her father pay support indefinitely. He urged that the child's medical condition could only be characterized as minor and cosmetic and was an insufficient basis for leaving school. Because the agreement was automatically voided by the child's failure to matriculate in college, respondent argued, he had no financial obligation to his daughter but continued to support her anyway until she reached twenty-one; therefore, he maintained, he did not owe any arrears and had no further obligation to pay under the agreement. The trial commenced on September 30, 2002. Over the course of seven additional [*3]dates, the support magistrate heard testimony from the parties, the subject child, four doctors who had examined Christina for alopecia areata, respondent's accountant, and petitioner's forensic accountant. The parties, by their counsel, submitted written summations.
Findings of Fact and Order of the Support Magistrate
 Support Magistrate Schiraldi Stein found that respondent's support obligation could only terminate upon the happening of the latest of two events - the child's graduation from college or her twenty-first birthday. Since neither of these events had occurred as of the spring of 2001, the support magistrate concluded that respondent had no right under the 1996 order to adjust or terminate the payments. Although the support magistrate found that the child's partial hair loss did not excuse her from her obligation to attend school, she found that the reason for her withdrawal from her course of study was of no legal consequence under the order. Because the stipulation did not anticipate a circumstance wherein the child did not complete her education in four years, and because the child in fact continued her education subsequent to the Spring 2001 semester, respondent's support obligation never ceased. Relying on Black's Law Dictionary, the support magistrate found that Christina was in fact "matriculating" in college during the pendency of this action as contemplated by the 1996 order because she had resumed her schooling at another college.
Based on the language and intent of Family Court Act §451, the support magistrate found that respondent's exercise of self-help was inappropriate and that he was in arrears because he had not moved prospectively to be relieved of the order.[FN1] The support magistrate further found, [*4]contrary to respondent's assertion, that petitioner had not waived the cost of living adjustment anticipated in the 1996 order. In total, Support Magistrate Schiraldi Stein found that respondent was in arrears of $110,571.19 as of February 15, 2004, entered a money judgment and ordered respondent to pay the child's medical expenses.[FN2] 
Support Magistrate Schiraldi Stein declined to find respondent's failure to pay under the order willful because she concluded that this failure was not born of an unwillingness to support the child but of respondent's genuine belief that he was no longer obligated under the agreement. Respondent was ordered to have the monthly support paid on the 15th of every month and to pay Christina's tuition and expenses directly to her college. Although she concluded that suspending respondent's driving privileges would have no salutory effect, Support Magistrate Schiraldi Stein ordered the Support Collection Unit to commence suspension proceedings. No attorneys' fees were awarded because respondent's failure to pay support was not found to be willful. Although the support magistrate concluded that respondent has greater resources than petitioner, she found that the credibility and conduct of the parties militated against making an award of counsel fees.

Cross-Objections
Respondent, by his attorney, filed an objection to the decision on or about March 1, 2004. Respondent urges that the support magistrate's order will result in an unfair boon to the child in that she has been found eligible to receive support for whatever period she is enrolled in a college. As long as Christina takes care to withdraw before finishing any of her courses, her father fears, he will have to support her for a lifetime. In the absence of a clear stipulation to the [*5]contrary, respondent argues that a parent cannot be obligated to pay support beyond a child's twenty-first birthday.
 Respondent argues that the support magistrate's reliance on the term "matriculate" is misplaced because standards of matriculation vary from institution to institution. The plain meaning of the 1996 order was that upon the child's leaving college, respondent was automatically relieved of his support obligation. The 1996 order provides that if the child stopped attending school full-time, the support agreement would "become void and the parties, in good faith, will negotiate a new agreement" (see, 1996 order at p.6 ¶ 1 e).[FN3] Moreover, respondent argues, the child's education subsequent to leaving Roger Williams University has not been on a full-time basis. Respondent adds that he was never consulted, nor did he ever consent, to the child's attendance at any institution of higher learning in which she has enrolled and that the 1996 order requires his prior consent.
 Under the terms of the order entered by the support magistrate in January 2004, respondent claims he is improperly obligated to pay support to the petitioner and to pay the child's college costs directly. Respondent seeks to have the entire order vacated as he believes that it is inconsistent with the parties' 1996 agreement. Furthermore, respondent questions the necessity of the entry of a money judgment and suspension of his driver's license in light of the support magistrate's finding that he has always fulfilled his support obligation. Respondent also objects to that part of the order which obligates him to pay the child's medical expenses except for those related to obtaining the withdrawal from Roger Williams University. Mr. Grossman also contends that he should not be obligated to pay a cost of living adjustment because he gave petitioner extra funds to provide for Christina. In sum, respondent rejects the support magistrate's findings entirely and states that he does not owe any arrears at all. Assuming arguendo that he is in arrears, respondent contests the support magistrate's calculation thereof.
 On or about March 15, 2004, petitioner filed a reply to respondent's objection and objections of her own to the support magistrate's order. Petitioner concedes that the order requires respondent to pay on-going support both to the child's school and to petitioner and agrees that respondent should be credited for payments made to the institution. Petitioner also consents to the vacature of that part of the order which seeks to suspend respondent's license. However, petitioner objects to that portion of the order which denied her claim for attorney's fees. Petitioner argues that respondent's failure to pay support was in fact willful and that the support magistrate's failure to award these funds was an error in law and fact and an abuse of discretion. Petitioner further objects to that portion of the order which ordered respondent to pay support in the amount of $53,000 per year without adjusting that figure in accordance with the Consumer Price Index as required by the 1996 order.
Discussion
 The Court finds, as a preliminary matter, that respondent's lack of involvement in his daughter's education, while unfortunate, is not a viable defense in this enforcement proceeding. Respondent testified before the Support Magistrate on September 30, 2002 that he "never took any interest" in which college the child attended and merely signed the checks presented to him by his accountant (see, September 30, 2002 transcript at p. 30 line 9). [*6]Respondent added that he had "no connection ... to this whole affair" and just paid what he was supposed to pay (see, September 30, 2002 transcript at p. 34 lines 3-4). Respondent testified that he has not seen his daughter in the last two years and that although he receives many letters from petitioner, he never opens them.
 At no time during the hearing did respondent raise the alleged lack of consultation as a defense nor did respondent claim that he was relieved of his obligations based on any withdrawal on the child's part from his control and supervision (see generally, Besharov, Practice Commentaries, McKinney's Cons. Laws of NY, Book 29A, Family Court Act § 413 at 93). For reasons best known to the parties and beyond the scope of the petition, respondent has absented himself from offering input into the child's life-decisions and delegated financial matters involving Christina to his accountant. Respondent's failure to be actively involved in his daughter's life may not inure to his benefit as a matter of equity.
 This Court finds that Mr. Grossman implicitly approved of the child's choice of school based on his failure to unequivocally disapprove of the institution prior to her enrollment. Hartle v. Cobane, 643 N.Y.S2d 726 (3rd Dep't., 1996). Respondent's admission that that he did not read petitioner's many letters and that he has no direct contact with her or the child relieves petitioner of her duty to affirmatively seek his consent (see generally, Harp v. McCann, 97 AD2d 868, 3rd Dep't. 1983).
 Respondent is correct that under the relevant section of the Family Court Act and the Domestic Relations Law a parent is not normally obligated to support a child once he or she reaches the age of twenty-one. However, respondent's reliance on Hoffman v. Hoffman, 122 AD2d 583, is unavailing. The Appellate Division, Fourth Department held in Hoffman, "that only an express agreement in umistakable terms" will cause contractual liability to attach to require a parent to support an adult child. However, respondent voluntarily and unequivocally contracted to support the child beyond her twenty-first birthday provided that she was pursuing a college education.[FN4] Streuli v. Streuli, 60 AD2d 829 (1st Dep't. 1978). A party who duly waives the statutory provisions excusing a parent from supporting an adult child cannot later claims the benefit thereof. Reynolds v. Reynolds, 71 AD2d 837 at 838 (4th Dep't . 1979).
 Respondent's reliance on Lawrence v. Lawrence, 180 AD2d 619, is similarly misplaced. In Lawrence, the Appellate Division, Second Department held that a child's mere act of enrolling in college on the eve of his twenty-first birthday was insufficient to impose a continuing support obligation upon his father. Respondent has neither argued nor proved that the circumstances of Christina's enrollment at Roger Williams University were at all unusual or [*7]designed in some way to require him to pay support for an unreasonable or unanticipated period.
 Despite both parties' arguments to the contrary, the 1996 order is equivocal with respect to the conditions that would apply if Christina stopped attending school on a full-time basis. Paragraph 1(e) of the stipulation states in pertinent part that "(i)f the child stops attending school full-time, this agreement shall become null and void" and the parties would negotiate a new agreement. However, paragraph 2(b) contemplates that if the child entered college "but does not complete the course of study therein" respondent's "obligation" (emphasis added) would revert to the pre-college rate and terminate when the child reached age twenty-one. The stipulation therefore relieved respondent of his obligation, at least temporarily, if the child did not complete hereducation, while simultaneously requiring him to continue making payments. In the face of this contradiction, Support Magistrate Schiraldi Stein had no choice but to interpret the 1996 order.[FN5]
Although respondent is clearly dissatisfied with the Support Magistrate's decision that he is obligated to continue to pay support, he has not alleged an error of fact or law with respect to the support magistrate's determination that the subject child was matriculating in college during the pendency of this matter. Respondent's concern that the subject child could attend college indefinitely as part of a sophisticated scheme to extract support from him is not properly before the Court at this time. Although respondent suggested in his cross-examination of the child and in his summation that Christina's academic performance at Moravian College was sub-par, he presented no concrete evidence to the support magistrate which would indicate that the child was not matriculating at that institution. Respondent's comment in his objection suggesting that Christina had enrolled in yet another college is not properly raised during the objection stage of the case but is similarly of no moment. The subject child is not required under the order to attend or complete her course of study at any one institution; she is merely obligated to matriculate toward graduation. If the child is not in fact pursuing a degree on a full-time basis in a recognized course of study, respondent may petition the Court to relieve him of his support obligation.
 Respondent's objection that he was improperly ordered to pay the child's college costs and to pay petitioner directly has merit. The order is hereby modified to reflect that respondent is required to pay directly to any university in which Christina is enrolled as a full-time student all tuition, room and board. The balance of the yearly support obligation, if any, is to be remitted to petitioner. Respondent's objection with respect to the child's medical expenses also has merit. Although Support Magistrate Schiraldi Stein found that some of Christina's medical bills were incurred in preparation for trial and that respondent should not be obligated to pay for these visits, there is no specification in the decision of which visits were litigation-related. The order is consequently modified to reflect that respondent is obligated to pay for Christina's first [*8]doctor's office visit in Rhode Island after discovering the bald spot and not for subsequent doctor's visits related to alopecia areata. However, respondent remains obligated to maintain the child's health insurance while she is enrolled full-time as an undergraduate student.
Respondent's objection that Support Magistrate Schiraldi Stein should not have entered a money judgment is without merit. After determining that there had been a violation of the order of support, the support magistrate was compelled to enter a money judgment under Family Court Act § 454(2)(a). Family Court Act § 454 further provides that in the event of a proven violation the court may suspend an obligor's driving privileges. A finding of willfulness is not a necessary pre-requisite to the suspension of a driver's license. The support magistrate's statements that she did not expect that license suspension would hinder respondent in any way do not undermine her conclusion that the law should be equally applied to all who are in arrears of over four months of payments. Support Magistrate Schiraldi Stein did not abuse her discretion in directing the Support Collection Unit to commence suspension proceedings. If respondent has in fact made full payment of all support arrears this may serve as a defense to a suspension proceeding under 18 NYCRR 346.12.
 Respondent's objection to the imposition of a cost of living adjustment must be denied. The 1996 order is clear and controlling on this subject. Respondent failed to prove that petitioner ever waived the adjustment. By the same token, petitioner's objection that the support magistrate's order should be adjusted by the Consumer Price Index has merit and this matter alone is remanded to Support Magistrate Schiraldi Stein for re-calculation.
Respondent's objection concerning the support magistrate's finding of arrears has already been discussed above and is dismissed. Respondent's specific objection to the amount of arrears set seems to be that the support magistrate "blindly" adopted petitioner's accountant's figures and not his own accountant's calculations despite a finding that Aaron Grossman had always been responsible for making sure that the payments were made. The Court notes that Aaron Grossman maintained in his trial testimony that no arrears were actually owed and that if any money was outstanding on the order it was only $7,093.66. Respondent's argument that Aaron Grossman was inherently a more trustworthy witness because he was not hired in connection with the litigation is unpersuasive. The Court sees no basis to disturb the support magistrate's calculation of arrearage. Petitioner's objection that respondent's violation should be deemed willful under Powers v. Powers, 86 NY2d 63 (1995) and its progeny must be denied. The Court of Appeals determined in Powers that proof that a respondent has failed to pay support as ordered alone establishes petitioner's direct case of willful violation shifting to respondent the burden of going forward. It is axiomatic that a finding of willfulness requires proof of both the ability to pay support and the failure to do so (FCA §455). In the vast majority of enforcement proceedings the issue to be determined by the finder of fact is whether or not the obligor had the ability to make the payments. The instant matter presents an unusual circumstance wherein it is clear that respondent had the ability to pay but chose not to based on his interpretation of the 1996 order.
The Court concurs with petitioner that it is difficult to ascertain what respondent "genuinely believed" his obligation was because of his delegation of responsibility under the order to those in his employ. Furthermore, a respondent's belief is irrelevant under Powers analysis as it is the order that is controlling and not the beliefs of the parties. However, in the instant matter, the order was unclear on its face as to the provisions that would apply if the subject child left school before reaching her twenty-first birthday. Because the court may only [*9]impose sanctions for failure to pay support as ordered, and because the order begs for interpretation, it would be inappropriate for contempt sanctions to attach for failure to make payments under these circumstances. "An imprecise command followed by punishment for lack of strict compliance is a form of tyranny."[FN6]
The support magistrate declined to grant petitioner's request for attorney's fees because she did not find respondent's failure to pay to be willful. Petitioner's objection that attorney's fees should have been awarded on other grounds is without merit. Petitioner's statement in her objection that it was obvious from the record of the proceedings that there is a disparity in the parties' financial resources and that this is a sufficient basis alone for an award of counsel fees is incorrect. The burden is upon the parent seeking the award to establish facts which entitle him or her to counsel fees. The applicant must offer more than a mere request for counsel fees without supporting documentation. Moreover, the support magistrate's denial of counsel fees on the basis of petitioner's conduct in the litigation was justified.
This matter is hereby remanded to Support Magistrate for re-calculation of the order of support in conformity with the Consumer Price Index. Respondent is ordered to maintain the child's health insurance while she is a full-time college student progressing toward a college degree. Respondent is ordered to pay the un-reimbursed portion, if any, of Christina's Rhode Island physician's fee. Any funds paid to subsequent medical providers for examination of the child for alopecia areata prior to the commencement of the hearing are to be refunded to
respondent. The balance of Support Magistrate Schiraldi Stein's order of January 22, 2004 is upheld and any remaining objections are dismissed.
This constitutes the decision and order of the Court.
Notify parties, Support Magistrate Schiraldi Stein, and the Support Collection Unit.
___________________________
Helen C. Sturm, J.F.C.
Dated:New York, NY 
Footnotes

Footnote 1:Respondent argues in his objection that he was not obligated to seek court intervention because the terms of the parties' 1996 agreement were controlling and the parties' were obligated thereby to negotiate a new agreement. Respondent therefore argues that he did not engage in any inappropriate self-help and that petitioner was obligated to discuss the matter with him instead of returning to court. Given that the parties' agreement was ambiguous and that it was only after lengthy litigation that the support part determined that respondent's support obligation continued at the higher rate, this Court does not fault respondent for not filing his own petition. However, the Court concurs with the support magistrate's finding of a violation and as respondent's support obligation never terminated, the determination that he is in arrears is upheld. 

Footnote 2:2Support Magistrate Schiraldi Stein specifically stated that respondent was not obligated to pay for doctor's visits that were related to obtaining a medical leave from Roger Williams University but was obligated to pay for visits related to diagnosis and treatment only. However, the support magistrate did not specify which visits she considered to be treatment related and which she considered litigation-related (see, Discussion section infra at p. 9).

Footnote 3:3 However, the very same document states that "if the child enters college but does not complete her course of study therein" respondent's obligation would revert to the $48,000 per year level and would terminate when she reached the age of twenty-one (see Discussion section at p. 8).

Footnote 4:The portion of the 1996 order which obligates respondent to support Christina while she is pursuing a four-year college degree is express and unmistakable. The subject child's date of birth is September 11, 1982 and, based upon the record, she began college in the fall of 2000. Had her schooling not been interrupted, and had she completed her education in the four-year period undertaken by most undergraduates, Christina would have graduated in the spring of 2004 and have been clearly entitled to support under the express terrms of the 1996 order well beyond her twenty-first birthday. The crux of the parties' dispute lies in their disagreement over what is required of Christina to satisfy the term of the order that requires her to "pursue" a degree and not whether or not her father is obligated to support this pursuit beyond her twenty-first birthday. Under the terms of the parties' agreement, respondent's obligation ceases upon the latest happening of two events - the child's graduation from college or reaching the age of twenty-one.

Footnote 5:Respondent's argument that the 1996 order was self-effecting is without merit both because the order as written is self-contradicting and because the effect of asking the court to so-order the stipulation was to make its terms court-imposed. Reynolds v. Reynolds, 71 AD2d 873 at 838. Respondent argues in rebuttal to petitioner's objection that the term of the agreement that required the parties to re-negotiate in the event that Christina did not attend school is evidence in itself that the 1996 stipulation became void and therefore unenforceable. This argument is unpersuasive. The parties' alleged intention to avoid further litigation did not bar either party from seeking the intervention of the court in resolving disputes.

Footnote 6:Lawrence N. Gray, A Practice Commentary to Judiciary Law Article 19, 1 Cardozo Pub. L., Pol'y. & Ethics J.60, 71 (2003) relying on Pasedena City Board of Education v. Spangler, 427 U.S. 424, 438-39(1976); Raley v. Ohio, 360 U.S. 423, 438 (1959); International Longshoreman's Association v. Philadelphia Maritime Trade Ass'n , 899 F.2D 143, 146 (2d Cir. 1990).