■ In the Matter of Douglas O. Carnahan, Appellant, v Susan M. Parrillo, Respondent. (And Another Related Proceeding.) [977 NYS2d 440]—

Stein, J.P. Appeal from an order of the Family Court of Saratoga County (Jensen, J.), entered September 26, 2012, which, in two proceedings pursuant to Family Ct Act article 4, denied petitioner's objections to the order of a Support Magistrate.

Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the divorced parents of two children (born in 1997 and 2001). Pursuant to a November 2008 order to which the parties stipulated, the father was required to pay $3,464.47 per month in child support, with 5% increases every three years commencing in 2011. At the time the order was entered, the father worked as a financial advisor for Morgan Stanley Smith Barney (hereinafter MSSB) and earned approximately $200,000 per year. The father left MSSB in September 2010 and joined Wells Fargo in a similar capacity, where his income dramatically declined. The father thereafter commenced the first of these proceedings in September 2011, seeking a downward modification of his support obligation based upon an alleged financial hardship, and ceased paying the full amount required by the existing order. As a result, the mother commenced the second of these proceedings, alleging that the father had willfully violated the support order. Following a trial, the Support Magistrate (Ellis, S.M.) dismissed the father's modification petition and found that he had willfully violated the support order. Family Court denied the father's written objections and this appeal ensued.

We affirm. It is well settled that a parent seeking a downward modification of a child support order has the burden of establishing a change in circumstances sufficient to warrant the requested decrease (*see Matter of Silver v Reiss*, 74 AD3d 1441, 1442 [2010]; *Matter of Bianchi v Breakell*, 48 AD3d 1000, 1002 [2008]). As this Court has repeatedly held, " '[a] child support obligation turns on a parent's ability to provide support, rather than the parent's current financial situation' " (*Murray v Murray*, 101 AD3d 1320, 1323 [2012], *lv denied* 20 NY3d 1085 [2013], quoting *Matter of Freedman v Horike*, 68 AD3d 1205, 1206 [2009], *lv dismissed and denied* 14 NY3d 811 [2010]; *accord Matter of Berrada v Berrada*, 90 AD3d 1192, 1193 [2011]).

Here, Family Court rejected the father's contention that he was forced to terminate his employment with MSSB and that the resulting decline in his income and overall financial hardship was involuntary. The father had worked for MSSB since 2003 and entered into a joint production agreement with Sandra Butler—another financial advisor at MSSB—under which he and Butler jointly managed approximately $200 million in customer assets. After discovering that Butler was engaged in negotiations to bring a third person into the partnership, the father sought to terminate the joint production agreement and ultimately tendered his resignation from MSSB. Immediately thereafter, the father became employed as an investment advisor with Wells Fargo. However, as a result of an injunction, he

was effectively prohibited from contacting any MSSB clients for a period of one year after leaving the firm and his subsequent income from Wells Fargo was significantly reduced as compared to his prior income.

As Family Court found, the proof elicited at trial demonstrated that, notwithstanding the termination of the agreement with Butler, the father would have retained a substantial amount of client assets if he had stayed with MSSB, he was neither forced out nor required to leave his position with MSSB and he resigned with full knowledge that he was bound by a contractual provision not to compete, which led to an injunction being issued against him. Therefore, according deference to Family Court's credibility assessments, the record evidence supports the finding that, regardless of the father's intentions, the decrease in his income was the result of his voluntary departure from his position at MSSB (see Matter of Bianchi v Breakell, 48 AD3d at 1003).

Family Court additionally found that a payment of $611,000, which the father received from Wells Fargo, was available to satisfy his child support obligation. We agree. Even if, as the father contends, such funds were in the nature of a loan, which did not constitute income for the purposes of establishing an award of child support (see Family Ct Act § 413 [1] [b] [5] [i], [ii], [iii]), we nonetheless conclude that it was within Family Court's discretion to consider the funds as a resource available to the father in determining his ability to continue to meet his child support obligation and, accordingly, whether the circumstances warranted a downward modification (see Matter of Duguay v Paoletti, 279 AD2d 767, 768 [2001]). Wells Fargo provided these funds to the father in a lump-sum payment when he joined that firm. According to the terms of payment, the father was not obligated to repay Wells Fargo anything for two years and, thereafter, such obligation would be forgiven if he achieved certain production levels. Even if the father did not attain such production levels after the first two years, Wells Fargo would cover half the monthly payments.

The father testified that he used the funds from Wells Fargo to pay off debt and for the down payment for the purchase of a second home in May 2011.* The evidence further shows that, in the months preceding and immediately following the filing of his modification petition, the father withdrew significant funds

---

* At the time he purchased the second home, the father also owned a home that he had purchased in 2007 for approximately $528,000. Although he listed this first home for sale in 2010, the listing expired in January 2011 and the home had not been re-listed for sale.

from his accounts, paid off various loans, including the $192,000 mortgage on his second home, and made other substantial discretionary purchases and payments. The father also sold assets and received substantial income tax refunds. In a prepetition loan application, the father represented that he was earning $16,660 per month, owned more than $500,000 in liquid assets and had a net worth of approximately $1.2 million. In light of the foregoing, the record supports a finding that the father's financial difficulties resulted from his voluntary change of employment and were made worse by his discretionary spending. Under these circumstances, we discern no basis to disturb Family Court's conclusion that the father failed to meet his burden of establishing a change in circumstances and financial hardship sufficient to warrant a modification of his child support obligation (*see Matter of Silver v Reiss*, 74 AD3d at 1442).

For the same reasons, inasmuch as the father failed to meet his burden of demonstrating an inability to comply with his child support obligation, Family Court's finding of a willful violation was also supported by the record (*see Matter of Powers v Powers*, 86 NY2d 63, 69-70 [1995]; *Matter of St. Lawrence County Support Collection Unit v Laneuville*, 101 AD3d 1199, 1200 [2012]; *Matter of Richards-Szabo v Szabo*, 99 AD3d 1069, 1070 [2012]; *Matter of Thomas v Sylvester*, 95 AD3d 1488, 1489 [2012]). To the extent not specifically addressed herein, the father's remaining claims have been examined and found to be lacking in merit.

McCarthy, Spain and Egan Jr., JJ., concur. Ordered that the order is affirmed, without costs.