This opinion is uncorrected and subject to revision before
publication in the New York Reports.
--------------------------------------------------------------------

No. 82
In the Matter of Columbia County
Support Collection Unit, &c.,
             Respondent,
         v.
Joshua A. Risley,
             Appellant.
(And Two Other Related
Proceedings.)


             Theodore J. Stein, for appellant.
             Daniel Gartenstein, for respondent.


GARCIA, J.:

        We are called upon to decide whether Family Court, in
revoking two prior suspended orders of commitment, was authorized
to order consecutive six-month sentences for each to run
consecutively with a third six-month sentence imposed for a
current violation.  We conclude that it was.

- 1 -

Enforcing child support obligations has long been a priority in New York. More than fifty years ago, this State enacted the "Family Court Act," establishing the Family Court and its powers of enforcement, including the power to commit an individual "to jail for a term not to exceed six months" for a willful failure to obey a support order (Family Ct Act § 454 [a], L 1962, ch 686). Subsequently, this State enacted the "New York State Support Enforcement Act of 1986" (Support Enforcement Act), aimed at addressing the harmful effects of the pervasive disregard of court-ordered support obligations. In approving this legislation, then Governor Mario Cuomo admonished, "[t]he absence of an effective child support system has been a major factor in the alarming rate of poverty among children in this country, who are owed nearly $3 billion in unpaid child support" (Governor's Mem approving L 1986, ch 892, 1986 McKinney's Session Laws of NY at 3213).[1] The Support Enforcement Act's primary purpose was to "ensure that the children of this state . . . receive the support that is their legal right" by addressing "support enforcement issues vigorously and comprehensively" (id. at 3214) and it "[s]et forth all the remedies available for enforcing a support order upon failure of a respondent to comply,

_____

[1]Today, that number has increased to over $115 billion (see U.S. Department of Health and Human Services, Administration for Children and Families, Office of Child Support Enforcement, *Preliminary Report FY 2015* at 90, http://www.acf.hhs.gov/sites/default/files/programs/css/fy2015_preliminary.pdf [accessed May 9, 2016]).

including . . . commitment" (L 1986, ch 892, Governor's Program
Bill Mem No. 84, Bill Jacket at 20).

As a result, Family Court is empowered "to use any or
all enforcement powers in every proceeding brought for violation
of a court order" of support (Family Ct Act § 454 [1]).  Such
powers include the authority to sentence willfully non-compliant
parents to jail "for a term not to exceed six months[,]" but also
to suspend such orders of commitment when appropriate (see Family
Ct Act §§ 454 [3] [a], 455 [1]).

Here, the Appellate Division rejected the contention
that consecutive commitments were not authorized by Family Court
Act § 454 (3) and concluded that "[g]iven the father's failure to
contest the amounts due and his willful refusal to voluntarily
pay them despite repeated opportunities afforded to him over more
than three years, we find no abuse of discretion in the
determination to run the sentences consecutively" (122 AD3d 1097,
1098 [3d Dept 2014]).  We agree and affirm.

"[T]he problems of enforcing a support order could fill
a book" (Matter of Powers v Powers, 86 NY2d 63, 65 [1995]).  To
address such problems, Family Court has various tools to use in
achieving the ultimate goal of providing children with the
financial support that is their right.  For instance, even absent
a willfulness finding, such enforcement remedies include entry of
a money judgment, income deduction, undertaking, sequestration,
and the suspension of drivers' and recreational licenses (Family

Ct Act § 454 [2]).    Incarceration is an option when the Family

Court determines that a respondent *willfully* failed to comply

with "any lawful order of support," in which case, the court may:

> "[C]ommit the respondent to jail for a term
> not to exceed six months. For purposes of
> this subdivision, failure to pay support, as
> ordered, shall constitute prima facie
> evidence of a willful violation. . . . Such
> commitment does not prevent the court from
> subsequently committing the respondent for
> failure thereafter to comply with any such
> order . . . " (Family Ct Act § 454 [3] [a]).

Even when the commitment provision is invoked, Family

Court has the discretion to "suspend an order of commitment upon

such reasonable conditions, if any, as the court deems

appropriate to carry out the purposes of [article four] . . . "

(Family Ct Act § 455 [1]).    That suspension may, however, be

revoked "at any time" for "good cause shown" (id.).

The father in this case demonstrated the willful

flaunting of support orders the Legislature sought to address in

passing the Support Enforcement Act.   Without making any attempt

at an excuse for inability to pay, the father repeatedly failed

to meet his court-ordered support obligations.   His conduct

resulted in a substantial amount owed in arrears and two

suspended orders of commitment, one each in 2010 and 2012, for

willfully violating Family Court support orders.   Both suspended

commitments were conditioned upon the father making timely child

support payments.

In 2013, Family Court found yet a third willful

violation of a prior order, revoked the two suspended orders for the past violations, sentenced the father to a new six-month sentence, resulting in three consecutive six-month sentences. Once again, the father made no attempt to plead an inability to pay or seek modification of the support orders.

In ordering the term of incarceration, Family Court determined that the father willfully failed to comply with his child support obligations on three separate violation petitions and found good cause existed to revoke the father's two suspended commitments. The Appellate Division affirmed this conclusion (122 AD3d at 1098). Here, the father does not challenge the willfulness findings, but challenges only the Family Court's authority to order his six-month sentences be served consecutively.

Family Court's action was taken well after the initial suspension of the earlier orders of incarceration, raising an issue of the timing of the revocation. The statute expressly provides that Family Court "has continuing jurisdiction over any support proceeding brought under [article four] until its judgment is completely satisfied and may modify, set aside or vacate any order issued in the course of the proceeding . . . " (Family Ct Act § 451 [1]; see also Matter of Damadeo v Keller, 132 AD3d 670, 672 [2d Dept 2015]). In conjunction with this continuing jurisdiction, Family Court has authority to both suspend an order of commitment and to revoke such suspension "at

any time" for "good cause shown" (Family Court Act § 455 [1]; see Matter of Horike v Freedman, 81 AD3d 1091, 1091 [3d Dept 2011], lv denied and dismissed 16 NY3d 899 [2011]). These sections make clear that Family Court may reinstate a suspended commitment at *any time* while respondent has failed to satisfy the judgment. This is consistent with Appellate Division Departments that have held Family Court has the discretion to revoke a previously suspended judgment despite the fact that significant time has lapsed since the suspension (see Matter of Bonneau v Bonneau, 97 AD3d 917, 917-918 [3d Dept 2012]; see also Matter of Putnam County Probation Dept. v Dimichele, 120 AD3d 820, 820-821 [2d Dept 2014]).

Therefore, Family Court retained jurisdiction over the father on the two suspended commitments because he failed to "completely satisfy" the judgments against him and failed to comply with ongoing support obligations. "Jurisdiction continues until such time as all arrears have been paid, no matter how long, and regardless of the age of the child" (Merril Sobie, Practice Commentaries, McKinney's 2016, Family Ct Act § 451). With this jurisdiction, Family Court had statutory authority to revoke the father's suspended sentences at any time for good cause shown, despite the lapse in time from the initial suspension.

Once the determination was made to revoke the suspensions, Family Court had discretion to impose consecutive

sentences for each willful violation.

In Walker v Walker, relied on by the Appellate Division below, this Court held that Family Court had authority under Family Court Act § 846-a to impose three consecutive six-month sentences for three separate violations of one protection order (86 NY2d 624 [1995]).  While Walker involved three violations of one protection order -- not the suspended sentence issue we have here -- this Court held "that the Family Court is not generally precluded from imposing, in the exercise of prudent and appropriate discretion, a maximum six-month jail commitment for each separate and distinct violation of an order of protection, to be served consecutively" (id. at 627).

The language in Family Court Act § 454 (3) (a) and § 846-a, the statute at issue in Walker, which prescribe Family Court's power to commit respondents to jail for willful violations of support and protection orders respectively, is nearly identical and has been so since each was originally drafted in 1962 (compare Family Ct Act § 454 [3] [a] with Family Ct Act § 846-a; see also L 1962, ch 686 at 3087 § 454 [a], 3128 § 846).  Although Walker is at some level distinguishable based on the policy behind orders of protection, namely to prevent physical harm, while orders of support are intended to enforce child support obligations, similar enforcement goals underlie both statutes.  As was the case with orders of protection, the judicial authority to commit prescribed in § 454 (3) (a) was

intended to prevent violations, deter further violations and vigorously and comprehensively enforce Family Court orders. Accordingly, as with Family Court Act § 846-a, consecutive sentences are authorized by the language and policy goals of article 4 of the statute.

With respect to concerns over lengthy incarceration of those simply unable to pay, the statutory scheme provides protection: "any respondent against whom an order of commitment has been issued, if financially unable to comply with any lawful order . . . may make application to the court for an order relieving him or her of payments directed in such order and the commitment order" (Family Ct Act § 455 [2]).  It is conceded that the father here never claimed an inability to pay or sought adjustment of his child support obligations.  To the contrary, the father repeatedly affirmed his ability to make weekly payments and never sought reduction or modification of his child support obligations.

Willful violators of Family Court orders should not in effect be given immunity for past violations -- conduct which would have justified incarceration at the time -- solely because the trial court exercised restraint in fashioning a remedy that provided yet another opportunity to meet support obligations. We conclude that it was within the discretion of the Family Court judge to impose consecutive sentences for each willful violation. Accordingly, the Appellate Division order should be affirmed,

without costs.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Order affirmed, without costs.  Opinion by Judge Garcia.  Chief Judge DiFiore and Judges Pigott, Rivera, Abdus-Salaam and Fahey concur.  Judge Stein took no part.


Decided June 7, 2016