Matter of Benson v Sherman (2023 NY Slip Op 03277)

Matter of Benson v Sherman

2023 NY Slip Op 03277

Decided on June 15, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 15, 2023

536053 
[*1]In the Matter of Jessica A. Benson, Petitioner,
v
James R. Sherman, Appellant.

Calendar Date:May 3, 2023

Before:Egan Jr., J.P., Lynch, Clark, Pritzker and Ceresia, JJ.

Christopher Hammond, Cooperstown, for appellant.

Lynch, J.
Appeal from an order of the Family Court of Cortland County (David C. Alexander, J.), entered August 4, 2022, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 4, to hold respondent in willful violation of a prior order of support, and committed respondent to jail for six months.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the divorced parents of a child (born in 2009). A 2020 support order directed the father to pay $40 per month in child support. The father defaulted on his support obligations in October 2021, prompting the mother — in March 2022 — to commence this violation proceeding alleging that the father had willfully violated the support order and owed $388.12 in arrears. The father failed to appear at the ensuing hearing, after which the Support Magistrate (Hinchcliff, S.M.), among other things, found him to be in default, determined that he had willfully violated the 2020 support order and owed $468.12 in arrears, recommended a six-month jail sentence, and referred the matter to Family Court for confirmation (see Family Ct Act § 439 [a], [e]).
Following a June 23, 2022 confirmation hearing at which the father appeared with counsel, Family Court confirmed the Support Magistrate's findings, found that the father willfully violated the 2020 order and imposed the recommended six-month sentence. Although the court accepted the father's proof that he was hospitalized for back surgery between October and November 2021, it rejected his testimony that he was unable to work after being discharged from the hospital, concluding that, while he "might have some limitations as [to] the kind of work he [could] do," there was no evidence that he was unable to work at all. The father appeals, challenging the willful violation finding.
Under Family Ct Act § 437, a parent is presumed to have sufficient means to support his or her child until the age of 21 (see Matter of Powers v Powers, 86 NY2d 63, 68-69 [1995]). The failure to pay support as required constitutes "prima facie evidence of a willful violation" (Family Ct Act § 454 [3] [a]; see Matter of Farina v Karp, 210 AD3d 1335, 1335 [3d Dept 2022]), thereby "shift[ing] the burden to the parent who owes the support to come forward with competent, credible evidence of his or her inability to pay" (Matter of Amanda YY. v Faisal ZZ., 199 AD3d 1254, 1255-1256 [3d Dept 2021] [internal quotation marks and citations omitted], lv denied 38 NY3d 908 [2022]; see Matter of Farina v Karp, 210 AD3d at 1335). "The willful failure to pay child support, which can result in a parent's incarceration, must be supported by clear and convincing evidence" (Matter of Farina v Karp, 210 AD3d at 1335 [internal quotation marks and citations omitted]).
The father does not dispute that he failed to make the required support payments and the evidence in the record, consisting of certified records from the Child Support Collection Unit, confirms as much[*2], revealing that he last paid child support in September 2021. This proof constitutes "prima facie evidence of a willful violation" (Family Ct Act § 454 [3] [a]; see Matter of Farina v Karp, 210 AD3d at 1335).
During the confirmation hearing, the father testified that he had spinal surgery in October 2021 and was in the hospital for 30 days. He then engaged in outpatient treatment, but was still unable to walk without pain, precluding him from returning to his former job doing manual labor. A medical discharge summary entered into evidence confirms as much, revealing that the father was hospitalized from October 24, 2021 to November 22, 2021, with directions to wear a "brace whenever he is out of bed and . . . avoid bending, lifting and twisting until further directed by [n]eurosurgery." The discharge plan also required the father to have weekly injections over a four-week period, with instructions to follow up with "Infectious Disease." The note also lists a variety of medications that were prescribed to him. The father testified that, due to his spinal surgery, he has only recently been able to do moderate work, noting that he had performed a "side job" three days prior to the confirmation hearing and some work the day before, but maintaining that he still had a lot of pain. The proof demonstrates that the father applied for Social Security disability benefits and was given an appointment to go over his eligibility in March 2022; however, there is no indication as to whether he was ultimately awarded such benefits upon a determination of disablement. The father also gave testimony, backed up by documentary evidence, that eviction proceedings had been commenced against him in March 2022.
In our view, the medical evidence confirms that the father was unable to work during his extended hospitalization and further demonstrates that he had significant physical limitations preventing him from performing manual labor following his discharge. He also remained under continuing care to address a serious infection. These factors, coupled with his efforts to obtain disability benefits and his potential eviction, speak to an inability to pay support during the relevant October 2021 through March 2022 time frame. The record is, however, devoid of proof that the father was only capable of obtaining employment involving physical labor, lacked other options in which to generate income, or attempted to find work accommodating his health limitations (see Matter of Farina v Karp, 210 AD3d at 1336; Matter of Amanda YY. v Faisal ZZ., 199 AD3d at 1257; Matter of Welt v Woodcock, 185 AD3d 1172, 1174 [3d Dept 2020]). The eviction proceedings are not probative of his ability to work and his application for Social Security disability benefits "does not preclude Family Court from determining that he was able to work in some capacity" (Matter of Farina v Karp, 210 AD3d at 1336; see Matter of Dench-Layton v Dench-Layton, 151 AD3d 1199, 1202 [3d Dept 2017]). Moreover, the [*3]support obligation of $40 a month was minimal and no payments were made during this period. Overall, we agree with Family Court's determination "that the father's proof was 'clearly inadequate to meet his burden of showing an inability to pay that would defeat the prima facie case of willful violation' " (Matter of Amanda YY. v Faisal ZZ., 199 AD3d at 1257, quoting Matter of Martin v Claesgens, 165 AD3d 1392, 1393 [3d Dept 2018]).
The father additionally argues that his attorney rendered ineffective assistance by failing to "attempt to present any witnesses who could have confirmed [his] inability to work after his back surgery" (see Family Ct Act § 262 [a] [vi]). We are unpersuaded. At the confirmation hearing, counsel successfully admitted evidence of medical records corroborating the father's contention that he was hospitalized for approximately one month of the relevant time frame and had physical injuries limiting his work options. However, there is no indication from those records that he was totally unable to work in any manner and it is speculative to assume that witnesses were prepared to testify in that regard. As such, the father "has failed to demonstrate the absence of . . . legitimate explanations for counsel's alleged failure" to present such witness testimony (Matter of Y. SS. [E. SS.], 211 AD3d 1390, 1393 [3d Dept 2022]). Counsel also submitted documentary evidence demonstrating that the father was the subject of an eviction proceeding and was applying for Social Security disability benefits — evidence that was relevant to the question of willfulness. Finally, counsel elicited favorable testimony from the father and made a cogent closing argument on his behalf. When considering counsel's efforts as a whole, we are satisfied that the father was provided with meaningful representation.
Egan Jr., J.P., Clark, Pritzker and Ceresia, JJ., concur.
ORDERED that the order is affirmed, without costs.