Spain, J.
The parties entered into a separation agreement in 2004 in which defendant agreed, among other things, to pay plaintiff a monthly spousal support payment until the occurrence of any one of four specified termination events. The agreement, amended in 2005 as to the monthly payment, was incorporated into, but not merged with, a 2007 judgment of divorce.* One of the events that would trigger termination of plaintiffs spousal support was her “living habitually with another person over the age of [18] years in a spousal type of relationship.” In September 2010, defendant moved to terminate his spousal support obligation, alleging that plaintiff had triggered the termination provision by cohabiting with an adult male (hereinafter the male). After a full hearing, Supreme Court denied the motion and awarded plaintiff counsel fees. Defendant now appeals, and we affirm.
“ ‘A separation agreement that is incorporated into but not merged with a divorce decree is an independent contract binding on the parties unless impeached or challenged for some cause recognized by law’ ” (Bjerke v Bjerke, 69 AD3d 1042, 1043-1044 [2010], quoting Merl v Merl, 67 NY2d 359, 362 [1986] [citations omitted]; see Matter of Stewart v Stewart, 93 AD3d 907, 908 [2012]). Principles of contract law apply to the interpretation of such agreements (see Hejna v Reilly, 88 AD3d 1119, 1120 [2011]; Matter of Wasyliw v Smith, 18 AD3d 931, 932 [2005]). Where the language of the agreement is clear, the court must determine the intent of the parties by examining the agreement itself (see Desautels v Desautels, 80 AD3d 926, 928 *1000 [2011]; Matter of Wasyliw v Smith, 18 AD3d at 932; Hendrix v Hendrix, 2 AD3d 1257, 1258 [2003]). Whether the language is ambiguous is a question of law (see Hendrix v Hendrix, 2 AD3d at 1258), and any ambiguity “must be resolved by determining the parties’ intent at the time of contracting, either from within the four corners of the document, if possible, or, as a last resort, from whatever extrinsic evidence is available” (Cortese v Redmond, 199 AD2d 785, 786 [1993]; see Dagliolo v Dagliolo, 91 AD3d 1260, 1260 [2012]; Bjerke v Bjerke, 69 AD3d at 1044).
As the record amply supports the conclusion that plaintiff has been living habitually with the male, an adult, the dispute distills to whether plaintiffs relationship with him is a “spousal type of relationship” within the meaning of the separation agreement; the termination clause itself does not define or otherwise provide guidance as to the meaning of that phrase. Moreover, consideration of the entirety of the agreement fails to shed light on the parties’ intent in drafting the “spousal type of relationship” language, although it is clear that it does not equate to marriage inasmuch as the agreement contains a separate termination provision regarding remarriage by plaintiff. Both parties appear to concede, and we agree, that, given the ambiguous language, it was necessary for Supreme Court to hold a hearing to consider extrinsic evidence in order to determine their intentions (see Dagliolo v Dagliolo, 91 AD3d at 1260).
Defendant testified that, although not represented by counsel during the negotiations, he was “very actively involved” in drafting the terms of the agreement, and that it was he who proposed the phrase at issue. As to his intent in including the “spousal type of relationship” phrase, defendant provided various explanations, including: that it was “intended to cover any and all possible occurrences of [plaintiff] living under the same roof in any type of relationship, under any circumstance, with anyone on a regular basis, over the age of 18”; that it “was designed to be any situation where two adults are living under the same roof’; and “[i]t meant a romantic relationship. A relationship with a man. A relationship with a woman. It did [not] matter. Under the same roof was all it was designed to capture. Romantic or not.” Finally, defendant stated that the clause “had nothing to do with money. It was about a relationship between a man and a woman and the sanctity of it.” He asserted that it was “irrelevant” to him whether plaintiff’s finances were shared with the person with whom she habitually lived.
Plaintiff testified that the disputed phrase was drafted so that defendant would provide for her “in the manner to which [she] *1001 had become accustomed” during the parties’ marriage. She thought a “spousal type of relationship” was “being married in every way other than that legal piece of paper, total. Same names on the checking accounts. What [she had with defendant]. Mixing everything. Commingling funds and not worrying about” owing one another “$10 for [a] steak.” Supreme Court found the majority of defendant’s testimony regarding his intentions surrounding the disputed phrase to be self-serving and incredible and rejected his broad proposed definition of the phrase. The court found plaintiffs testimony and that of the male to be credible and concluded that the evidence demonstrated that their relationship was not a spousal type of relationship within the meaning of the termination clause.
The record fully supports Supreme Court’s conclusion. Plaintiff and the parties’ teenage daughter moved in with the male in the spring of 2010. According to plaintiff, she was experiencing financial hardship from her mortgage payments and carrying charges on her house and substantial credit card debt. After discussing her finances with the male, the two agreed that plaintiff and the daughter would stay in his home until plaintiff became financially secure, and that this arrangement would keep the daughter in their current school district and allow plaintiff to sell her house. Although this arrangement did not initially require plaintiff to pay rent or utilities, they did agree that she would begin to pay both after the sale of her house. While they did not determine an exact date where the arrangement would end, they believed that it would take approximately two to three years before plaintiff was financially secure, at which point she planned to purchase or rent a residence of her own. Plaintiffs attempts to carry through with this plan are evidenced by her efforts to sell her house after making various renovations, with his assistance, to make it more attractive to buyers.
While there is evidence that plaintiff and the male share many responsibilities around his home, including cooking meals, buying groceries and doing laundry for one another, the record demonstrates that all of plaintiffs finances remain independent of his and neither holds any expense, debt or asset of the other. Indeed, the only evidence of money being exchanged between them is his $2,000 loan to her in 2008, which she had fully repaid before the hearing. Although plaintiff named him as the beneficiary of a $25,000 term life insurance policy, she testified that she did so because he is familiar with her children, and she trusted him to distribute the proceeds among her children according to their needs. Although his current marriage would *1002 prohibit any greater commitment until after any divorce proceedings are finalized, the male and plaintiff both testified that, while their relationship is romantic, they have not discussed any such plans and, instead, enjoy their relationship as it currently exists. According deference to Supreme Court’s ability to view the witnesses, observe their demeanor and make credibility determinations, the court’s decision should be affirmed (see Matter of Gravelding v Loper, 42 AD3d 740, 742 [2007]).
Finally, inasmuch as defendant has not shown that Supreme Court had any interest in reaching a particular outcome and his assertions of bias appear to be little more than his own displeasure or disagreement with the court’s decisions, his argument that any further proceeding should be assigned to another judge is without merit (see Matter of Albany County Dept. of Social Servs. v Rossi, 62 AD3d 1049, 1050 [2009]). The court’s occasional impatience with each of the attorneys and witnesses is reflected in the record, but cannot be said to have preordained the outcome or prejudiced defendant, so as to reveal a bias or require recusal.
Peters, EJ., Lahtinen, Kavanagh and McCarthy, JJ., concur. Ordered that the order is affirmed, without costs.

 It was also further amended, as to its duration, in a 2008 stipulation.