■ In the Matter of MAUREEN APJOHN, Formerly Known as MAUREEN LUBINSKI, Respondent, v DAVID E. LUBINSKI, Appellant. (And Another Related Proceeding.) [981 NYS2d 166]—

Garry, J. Appeal from an order of the Family Court of Greene County (Tailleur, J.), entered February 22, 2013, which, in a proceeding pursuant to Family Ct Act article 4, denied respondent's objections to the order of a Support Magistrate.

Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the divorced parents of a son (born in 1993). In 1994, the parties executed a separation agreement which was incorporated, but not merged, into their judgment of divorce. In July 2011, the mother commenced this proceeding seeking an upward modification of child support and alleging that the father had failed to pay health insurance costs and college expenses for the son as required by the agreement. The father separately petitioned for, among other relief, a downward modification of support and reimbursement for alleged past overpayments. Following a hearing, a Support Magistrate issued an order and findings of fact to which the father objected. After Family Court sustained some of his objections, the Support Magistrate issued supplemental findings of fact and an order that, among other things, directed the father to pay specified college expenses and decreased his obligation for health insurance expenses. Family Court denied the father's further objections, and the father appeals.

The father first contends that Family Court erred in several respects in determining his obligation to contribute to the son's college expenses. The parties' agreement contains a "cap" provision; each party is required to contribute to the son's undergraduate college costs in an amount not to exceed half of the cost of tuition, room and board at a college or university that is part of the State University of New York (hereinafter SUNY). The agreement further provides that the son must apply to "the said college or university" for all possible grants, scholarships and financial aid before either party is obliged to pay any college costs. The son applied for and obtained financial aid from the private college where he enrolled in September 2011, as well as an outside scholarship. However, the father contends that the agreement required the son to apply to a SUNY institution for financial aid, and that as he did not do so, the father has no obligation to contribute anything toward his expenses. We disagree.

Ambiguity in a separation agreement is resolved, as with any contract, by determining the parties' intent from within the instrument's four corners, if possible, and otherwise from extrinsic evidence (see *Fecteau v Fecteau*, 97 AD3d 999, 999-1000 [2012]; *Bjerke v Bjerke*, 69 AD3d 1042, 1044 [2010]). In doing so, "[t]he court is not limited to the literal language of the agreement, but should also include a consideration of whatever may be reasonably implied from that literal language" (*Desautels v Desautels*, 80 AD3d 926, 928 [2011] [internal quotation marks and citation omitted]). In resolving the ambiguity as to whether the requirement to apply to "the said college or university" for financial aid refers to a SUNY institution or to the college attended by the son, we note that the agreement does not require the son to attend or apply for admission at a SUNY school, and the father did not show that it is possible to apply to a SUNY institution for financial aid without also applying for admission. Further, the contract provides that the parties "expect[ ] and desire" the son to pursue higher education, and it is a reasonable inference that they intended to facilitate this mutual goal not only by contributing to the cost, but also by ensuring that any available financial aid would be secured from the institution attended by the son to make it as affordable as possible. Accordingly, we agree that the son's financial aid application to the college where he enrolled was sufficient to trigger the father's contractual obligation to contribute to the son's expenses.

The agreement is further ambiguous as to whether financial aid obtained by the son is to be applied to reduce the parties' contributions, or to the son's remaining expenses. For reasons similar to those just discussed, we find that Family Court properly reduced the father's tuition obligation by the amount of the son's outside scholarship—a relatively small, one-time award—but not by the amount of a four-year grant received directly from the private college. As applied here, the private grant, which was calculated in accord with that school's tuition cost rather than the lower tuition at a SUNY school, is sufficiently large such that setting it off against the father's contribution would result in completely negating any tuition obligation from him, while leaving the son with a substantial bill. The agreement cannot reasonably be interpreted to require this result, which is inconsistent with the parties' stated desire for the son to obtain higher education and their explicit intent to contribute to this expense.

In view of this clearly-expressed intent, we further find that Family Court erred in subtracting loans obtained by the son

from the amount to be contributed by the parties. The agreement requires the son to apply for "scholarships, grant money or financial aid" but neither mentions loans nor requires the son to obtain them (*see Matter of Frank v Frank*, 88 AD3d 1123, 1124 [2011]; *compare Matter of Cranston v Horton*, 99 AD3d 1090, 1092 [2012]; *Matter of Hartle v Cobane*, 228 AD2d 756, 757-758 [1996]). As repayment will apparently be the son's responsibility rather than that of either party, and in the absence of clear direction in the agreement, it was error to take the loans into account in calculating the parties' obligations (*see Bungart v Bungart*, 107 AD3d 751, 752 [2013]; *Matter of Korosh v Korosh*, 99 AD3d 909, 911 [2012]; *Matter of Kent v Kent*, 29 AD3d 123, 134 [2006]).

There was no error in crediting the father's already-existing child support obligation against room and board costs, but not against tuition. In the absence of specific contractual language, the availability and amount of such a credit "depend[ ] upon the facts and circumstances in the particular case, taking into account the needs of the custodial parent to maintain a household and provide certain necessaries" (*Paro v Paro*, 215 AD2d 965, 966 [1995]). Here, the agreement simply requires that the amount of child support being paid by the father and the actual costs and expenses of the mother "shall be considered"—and Family Court gave due consideration to these circumstances.

The child support credit is greater than half of the cost of room and board at a SUNY institution and thus fully satisfies this aspect of the father's obligation. In determining the maximum amount of his remaining contribution, SUNY costs for fees, books and supplies should not have been included in addition to SUNY tuition. A court must not create a new agreement for the parties under the guise of contract construction, but must instead ascertain their intent "to the extent that [they] evidenced what they intended by what they wrote" (*Slatt v Slatt*, 64 NY2d 966, 967 [1985] [internal quotation marks and citation omitted]). Here, the plain language of the parties' agreement provided that the maximum amount was to be calculated based solely upon "tuition, room and board" at a SUNY institution. According to the SUNY information submitted by the parties, tuition for the academic year in question was $5,270; other fees and expenses were not included in this amount, but were listed as separate categories. Thus, deducting the son's one-year outside scholarship from the tuition figure and dividing the remainder in half, the father's maximum obligation for the son's college costs is $2,335.

Family Court correctly held that the plain language of the parties' agreement requires the mother to keep the son on her health insurance so long as that insurance is available to her, while the father is responsible for deductibles and copayments; contrary to the father's contention, the agreement does not permit him to put the son on his health insurance as an alternative. Finally, the father's claim for credit based upon overpayments of health insurance was properly denied. Pursuant to prior support orders, the father pays the share of the mother's health insurance premiums attributable to the difference between individual coverage and a family plan. The father sought a reduction based upon the mother's addition of her new husband to the family plan in 2009. In light of the strong public policy against recoupment of child support overpayments and the absence of any provision for such recoupment in the Child Support Standards Act, we find no error in the denial of reimbursement to the father for any portion of his previous payments (*see Johnson v Chapin*, 12 NY3d 461, 466 [2009]; *Baraby v Baraby*, 250 AD2d 201, 205 [1998]), despite the Support Magistrate's determination reducing his future obligation.*

Peters, P.J., Stein and McCarthy, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as (1) denied respondent's objection to the inclusion of costs other than tuition, room and board at a State University of New York institution in determining his maximum obligation for college costs, and (2) sustained respondent's objection to the calculation of this obligation by applying student loans obtained by the son to reduce respondent's obligation; respondent's obligation for college expenses modified to $2,335; and, as so modified, affirmed.

---

* Notably, the addition of the husband did not alter the cost of the family plan.