Clark, J. Appeal from an order of the Family Court of Albany County (M. Walsh, J.), entered June 10, 2016, which granted petitioner’s application, in a proceeding pursuant to Family Ct Act article 4, to, among other things, hold respondent in willful violation of a prior order of support. In 2000, petitioner (hereinafter the father) and respondent (hereinafter the mother) entered into a separation agreement that was subsequently incorporated, but not merged, into their 2003 judgment of divorce. In their separation agreement, the parties addressed, among other issues, the anticipated college education of their daughter (born in 1995). As relevant here, the separation agreement stated: “The parties agree that it is their intent that their daughter receive a college education. The parties agree that they will cooperate with each other in completing any and all necessary financial aid applications and that it is anticipated that their daughter will accept any work-study grants or employment during summers or vacation periods as to enable her to contribute toward the cost of her educational expenses. The parties agree to share in the costs of the child’s higher education; however, neither party’s obligation shall exceed fifty (50%) percent of tuition at a state university, plus the cost of reasonable living expenses.” In October 2015, after the child had attended several semesters at Schenectady County Community College and then Siena College, the father commenced this proceeding, alleging that the mother willfully violated a prior order of support by failing to pay, among other things, “half of [the child’s] college tuition expenses and related costs.” Following a hearing, a Support Magistrate found that the parties had “contracted to pay for a part of the [child’s] college tuition and related expenses” and that the mother’s failure to contribute was willful. Based on their respective incomes at that time, the Support Magistrate apportioned 80% of the financial responsibility for the semesters that had passed since the filing of the petition to the father and 20% to the mother. In determining the mother’s total financial obligation, the Support Magistrate calculated each party’s pro rata share after deducting the amount of scholarships, grants and loans received by the child from the total cost of her tuition and living expenses to reach an amount of $9,708. In the ensuing amended order of disposition, the Support Magistrate entered judgment against the mother in the amount of $9,708. The parties subsequently filed objections to the amended order of disposition. Family Court denied the mother’s objections and partially granted the father’s objections, concluding that, pursuant to the separation agreement, “the parties intended to equally share the cost of college and that the intent [was] that neither party would be responsible for any amount greater than half of the cost to obtain an education at a state university.” The court determined that, for the six semesters in which she did not contribute toward the child’s college tuition and living expenses, the mother was financially responsible for $28,377.50 and, in a June 2016 order, modified the Support Magistrate’s amended order of disposition accordingly. In reaching $28,377.50, the court calculated the total amount of tuition and living expenses for each semester, deducted any grants, scholarships and Stafford loans received by the child during that semester and divided the resulting amount in half. The court then assessed whether this amount exceeded one half of the cost of attending a state university during the same semester. If it did, Family Court capped the mother’s financial obligation for that semester by the state university amount. The mother now appeals. The primary issue before this Court is whether Family Court afforded a proper construction to the provision in the separation agreement addressing the cost of the child’s college education.* We conclude that it did not. A separation agreement is a legally binding and enforceable contract, subject to ordinary principles of contract construction and interpretation (see Graev v Graev, 11 NY3d 262, 276 [2008]; Matter of Meccico v Meccico, 76 NY2d 822, 823-824 [1990]; Desautels v Desautels, 80 AD3d 926, 928 [2011]). Where a separation agreement is clear and unambiguous on its face, the parties’ intent must be discerned from the four corners of the document, without resort to extrinsic evidence (see Graev v Graev, 11 NY3d at 276; Matter of Meccico v Meccico, 76 NY2d at 824). In discerning the parties’ intent, courts are not limited to “the literal language of the agreement,” but may consider “whatever may be reasonably implied from that literal language” (Hewlett v Hewlett, 243 AD2d 964, 966 [1997], lvs dismissed 91 NY2d 887 [1998], 95 NY2d 778 [2000]; accord Desautels v Desautels, 80 AD3d at 928; see Cheruvu v Cheruvu, 61 AD3d 1171, 1174 [2009]). In doing so, however, courts must exercise caution so as to avoid creating a new contract for the parties “under the guise of contract construction,” instead striving to ascertain the parties’ true intentions, to the extent that they evidenced those intentions in the agreement (Slatt v Slatt, 64 NY2d 966, 967 [1985]; see Laba v Carey, 29 NY2d 302, 308 [1971]; Matter of Apjohn v Lubinski, 114 AD3d 1061, 1064 [2014], lv denied 23 NY3d 902 [2014]). Here, the parties agreed to “share in the costs of the child’s higher education,” with such contribution being capped at 50% of tuition at a state university, plus the cost of reasonable living expenses. By its plain language, the disputed provision unequivocally demonstrates that the parties intended to encourage and facilitate the child’s pursuit of a college degree and to make some financial contribution—up to, but not necessarily equaling, 50% of the total cost of tuition at a state university—toward that pursuit. In agreeing to contribute, the parties did not use language such as “split” or “50-50,” despite such language appearing elsewhere in the separation agreement, including in the sections addressing dependent care expenses and the cost of health insurance coverage. Given the appearance of such language elsewhere in the agreement, its absence in the relevant provision is telling, as it suggests that the parties did not intend, as Family Court found, to equally split the total cost of the child’s college tuition—subject to the cap—and living expenses (see Mastrocovo v Capizzi, 87 AD3d 1296, 1298 [2011]; cf. Hasselback v 2055 Walden Ave., Inc., 139 AD3d 1385, 1388 [2016]). Furthermore, while the separation agreement provided that each party’s financial exposure would not exceed the tuition cap, it stopped short of defining the parties’ respective obligations. The absence of language defining their obligations does not render the provision ambiguous. Rather, by its omission, it is apparent that the parties contemplated a later agreement between themselves and, failing that, a subsequent determination by the court as to their respective contributions (see Matter of Covington v Boyle, 127 AD3d 1393, 1394 [2015]; Matter of Antes v Miller, 304 AD2d 892, 893 [2003]). Thus, while we agree that the mother’s failure to contribute anything toward the cost of the child’s college education constituted a willful violation of the separation agreement, Family Court erred in concluding that the parties intended to equally share the total cost of the child’s college tuition and living expenses, subject to the tuition cap, and entering a judgment against the mother in the amount of $28,377.50. Because the parties expressly undertook an obligation to contribute toward the cost of the child’s college education, but did not precisely define the extent of their obligations, Family Court should have proceeded to consider the parties’ financial means and ability to contribute and determined their respective obligations by assessing their pro rata shares of their combined parental income (see Gavrin v Heymann, 27 AD3d 693, 693-694 [2006]; Matter of Caputi v Williams, 286 AD2d 438, 439 [2001]; see generally Matter of Thompson v Malcolm, 71 AD3d 1154, 1154-1155 [2010]; Matter of Kellogg v Kellogg, 300 AD2d 996, 997 [2002]). Accordingly, we remit the matter to Family Court for a determination as to the parties’ respective obligations and financial means. In remitting, we note that any loans obtained by the child should not be deducted from the total amount of the child’s tuition and living expenses for each semester (see Matter of Apjohn v Lubinski, 114 AD3d at 1063-1064; Bungart v Bungart, 107 AD3d 751, 752 [2013]; Matter of Korosh v Korosh, 99 AD3d 909, 911 [2012]; compare Matter of Hartle v Cobane, 228 AD2d 756, 757-758 [1996]). Further, after determining the mother’s pro rata share and the total amount due and owing, the mother shall receive a credit for any payments that she has made, since entry of Family Court’s June 2016 order, toward the cost of the child’s college education. Finally, we agree with the mother that Family Court erred in directing that her payments toward the child’s college education be made through the Support Collection Unit, as “postsec-ondary education expenses [are] a separate item in addition to the basic child support obligation” (Matter of Cohen v Rosen, 207 AD2d 155, 157 [1995], lv denied 86 NY2d 702 [1995]; see Cimons v Cimons, 53 AD3d 125, 131 [2008]; Tryon v Tryon, 37 AD3d 455, 457 [2007]), not subject to collection through income execution (see generally CPLR 5241, 5242). To the extent that the mother’s remaining arguments have been preserved and are, therefore, properly before us, they have been examined and found to be lacking in merit. McCarthy, J.P., Lynch and Pritzker, JJ., concur. To the extent that the mother raises arguments regarding her basic child support obligation, she did not file a petition to modify her child support obligation and, thus, such arguments are not properly before us.