Matter of Shkaf v Shkaf (2018 NY Slip Op 04052)





Matter of Shkaf v Shkaf


2018 NY Slip Op 04052


Decided on June 7, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 7, 2018

524692

[*1]In the Matter of ANNA P. SHKAF, Appellant,
v
ANATOLY N. SHKAF, Respondent.

Calendar Date: April 25, 2018

Before: Garry, P.J., Lynch, Clark, Aarons and Rumsey, JJ.


Gordon, Tepper & DeCoursey, LLP, Glenville (Elise C. Powers of counsel), for appellant.
McCarthy-Cerrito & Moore, Latham (Pamela L. Moore of counsel), for respondent.


Garry, P.J.

MEMORANDUM AND ORDER
Appeal from an order of the Family Court of Saratoga County (Hall, J.), entered July 7, 2016, which dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 4, to hold respondent in willful violation of a prior support obligation.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of a child (born in 2001). The mother and father entered into a separation agreement that was incorporated, but not merged, into their March 2014 judgment of divorce. As pertinent here, the agreement provided that the father would make a weekly child support payment directly to the mother in a specified amount, that he would be
responsible for 30% of the child's reasonable health care expenses that were not covered by insurance, and that he would reimburse the mother for his share of such expenses within 15 days after receiving proof that the mother had paid them. The agreement also required the father to provide copies of his W-2 forms and income tax returns to the mother each year.
The mother commenced this support enforcement proceeding in June 2015, alleging that the father had failed to make timely child support payments, had delayed in paying or failed to pay certain health care insurance premiums and expenses, and had failed to turn over his 2014 W-2 forms and tax returns. After a hearing, the Support Magistrate found that no violation of the separation agreement had occurred. The mother filed objections, which Family Court dismissed, finding that the mother had not provided evidence of a willful violation. The mother appeals.
Parents are presumed to have the means to support their children under the age of 21 [*2](see Family Ct Act § 437; Matter of Powers v Powers, 86 NY2d 63, 68-69 [1995]). A showing that a parent has failed to pay child support as ordered establishes a willful violation on a prima facie basis and "shifts the burden to the parent who owes the support to come forward with competent, credible evidence of his or her inability to pay" (Matter of Dench-Layton v Dench-Layton, 151 AD3d 1199, 1201 [2017]; see Matter of Powers v Powers, 86 NY2d at 69; Matter of Vincek-Breakell v Czizik, 155 AD3d 1384, 1385 [2017]). The mother testified that the father's weekly child support payments were chronically delayed by "five, six, eight, nine weeks at a time" and did not become regular until after she commenced this proceeding and he was ordered to make payments through the Support Collection Unit. She stated that the father was also routinely late in paying his share of the child's medical and dental insurance premiums, which the agreement obligated him to pay on the 15th and 30th of each month, and that he was likewise frequently late in reimbursing her for his share of the child's uncovered health care expenses. The mother testified that she had to write to him repeatedly to remind him of these obligations, and she submitted a representative sample of these letters into evidence.
The most significant health care expense at issue was an orthodontic expenditure that the father failed to reimburse for approximately a year after being notified of the obligation. In an August 2014 letter, the mother provided the father with the orthodontist's treatment plan and bill, advised the father of the payment arrangements and the amount of his share of the cost, and gave him two options for making payment. She then made a down payment followed by monthly installment payments, sending the father receipts for each installment. She submitted into evidence her credit card statement showing the down payment and the check by which she paid the credit card bill, and testified that she had sent a copy of the check to the father. She also submitted into evidence an August 2014 email from the father advising that he would not pay this obligation. The mother testified that he did not make payment until after she commenced this enforcement proceeding. Finally, the mother testified that she wrote to the father in February and April 2015 asking him to turn over his 2014 W-2 forms and income tax returns, but he did not provide this documentation until after she commenced this proceeding, when the father's counsel submitted it with his financial disclosure affidavit.
Family Court's determination that the mother failed to prove a willful violation is not supported by the record or the law. The mother's testimonial and documentary submissions were amply sufficient to make a prima facie showing that the father's delays and failures to satisfy his obligations were willful violations, thus shifting the burden to him to demonstrate his inability to pay (see Matter of Vincek-Breakell v Czizik, 155 AD3d at 1385; Matter of Cowan v Lott, 307 AD2d 480, 481 [2003]). In response, the father made no effort to show that he could not meet his obligations; indeed, he admitted that he did not make the orthodontic payment or turn over the tax information until he was ordered to do so. Accordingly, he failed to satisfy his burden (see Matter of Vincek-Breakell v Czizik, 155 AD3d at 1385; Matter of Fifield v Whiting, 139 AD3d 1128, 1129-1130 [2016]; Matter of Boyle v Boyle, 101 AD3d 1412, 1413 [2012]). Family Court thus erred in dismissing the mother's objections. Contrary to the court's determination, the fact that the father had paid his obligations by the time of the hearing — at least in part, because he was ordered to do so — does not negate the evidence that he repeatedly delayed in fulfilling some of his responsibilities and completely avoided others, forcing the mother to make repeated efforts to obtain his compliance and, finally, to commence this proceeding.
Family Court further erred in interpreting the parties' agreement to find that the father was not obliged to pay his share of the orthodontic expense because the mother did not supply him with a formal receipt. Like any other contract, a separation agreement is interpreted in accordance with the intent of the parties, which is to be gleaned, if possible, from the language contained within the four corners of the contract (see Matter of Meccico v Meccico, 76 NY2d [*3]822, 823 [1990]; Desautels v Desautels, 80 AD3d 926, 928 [2011]). Significantly, "[i]n discerning the parties' intent, courts are not limited to the literal language of the agreement, but may consider whatever may be reasonably implied from that literal language" (Matter of Dillon v Dillon, 155 AD3d 1271, 1272-1273 [2017] [internal quotation marks and citation omitted]). The agreement required the mother to submit a "receipt" to the father within 15 days after incurring an uncovered health care expense and, in turn, required the father to reimburse her "within [15] days of receipt of proof of payment." The mother testified that she supplied receipts for the orthodontic installment payments. As she did not receive a receipt for the down payment, she instead provided the father with the full documentation that she had. In response, the father never demanded a formal receipt or claimed that the documentation was inadequate; instead, he advised that he would not pay until she gave him more contact with the child. Moreover, he did not reimburse her for any part of the installment payments for which she did provide receipts.
As for the down payment, nothing in the parties' agreement — which required the father to pay his share of "[a]ll" of the child's reasonable and necessary uncovered health care expenses — suggests that the parties intended to limit this obligation to those expenditures that could be documented with formal receipts. On the contrary, the contract's plain language obliges the father to reimburse the mother within 15 days after receiving "proof of payment by the [mother]." "[G]iving a practical interpretation to the language employed, so that the reasonable expectations of the parties may be realized" (Guntert v Daniels, 240 AD2d 789, 790 [1997]), we find that the word receipt, when read in context, "reasonably implie[s]" any form of documentary proof that the payment was made (Matter of Dillon v Dillon, 155 AD3d at 1272-1273 [internal quotation marks and citation omitted]). Having received such proof, the father's failure to reimburse the mother within the required 15-day period was a willful violation (see Matter of Williams v Johnson, 56 AD3d 1021, 1022 [2008]).
Family Court likewise erred in finding that the father did not violate the agreement by failing to turn over his W-2 forms and tax returns. The agreement did not set a specific time limit for this annual obligation but, rather, expressly provided that the purpose was to permit the parties "to determine if a modification [of the father's child support obligation was] required" — a purpose that unmistakably reveals that the parties intended this information to be provided promptly enough to permit a timely assessment of the need for modification. Significantly, when the father was finally compelled to provide the documents, they revealed that his 2014 income was substantially higher than the prior income upon which the parties had based the amount of his support payments. This belated revelation resulted in an eventual increase in the amount of his support obligation. By withholding his financial information until he was forced to provide it, the father successfully delayed this modification, and his failure to turn over the documents with reasonable promptness was another willful violation of the parties' agreement.[FN1]
As the father's violations were willful, the mother is entitled to a mandatory award of counsel fees (see Family Ct Act §§ 438 [b]; 454 [3]; Matter of Duffy v Duffy, 30 AD3d 735, 737 [2006]; Matter of Warner v Monroe, 262 AD2d 684, 686 [1999]). The matter must be remitted to Family Court for a determination of the amount.
Lynch, Clark, Aarons and Rumsey, JJ., concur.
ORDERED that the order is reversed, on the law, without costs, petition granted, and matter remitted to the Family Court of Saratoga County for further proceedings not inconsistent with this Court's decision.



Footnotes

Footnote 1: We note that the parties selected time periods of 14 and 15 days for several other obligations to turn over documents in the agreement, thus giving some indication of the time periods they considered to be reasonable.