Matter of Susko v Susko (2020 NY Slip Op 01536)





Matter of Susko v Susko


2020 NY Slip Op 01536


Decided on March 5, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 5, 2020

527939

[*1]In the Matter of Jennifer E. Susko, Appellant,
v
Brian J. Susko, Respondent. (And Another Related Proceeding.)

Calendar Date: January 10, 2020

Before: Garry, P.J., Mulvey, Devine, Pritzker and Colangelo, JJ.


Young/Sommer LLC, Albany (Lauren L. Hunt of counsel), for appellant.
Carola, Bagnoli & Tollisen, PLLC, Mechanicville (Gerald A. Thompson Jr. of counsel), for respondent.



Garry, P.J.
Appeal from an order of the Family Court of Saratoga County (Jensen, J.), entered October 11, 2018, which, among other things, dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 4, to modify a prior support obligation.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) were married in 1997 and are the parents of three children (born in 1999, 2002 and 2007). The mother commenced an action for divorce in 2015, and the parties entered into a settlement agreement that was incorporated, but not merged, into their judgment of divorce. The agreement included an opting-out child support provision setting the father's obligation at $400 weekly, and a provision by which the parties agreed that they would each contribute to the costs of each child's college education to the extent of their financial ability upon their consent to the chosen college, which consent was not to be unreasonably withheld.
In July 2017, the mother commenced enforcement proceedings alleging that the parties' oldest child (hereinafter the child) was about to begin her freshman year of college and that the father had violated the agreement by making only a minimal financial contribution and by refusing to state whether he consented to the chosen college. The mother also filed a modification petition seeking to recalculate the basic child support obligation and allocation of expenses. The father opposed both petitions.
Following a hearing, the Support Magistrate dismissed the modification petition on the ground that the mother had not demonstrated a change in circumstances. As for the enforcement petition, the Support Magistrate found that the father had given implied consent to the child's attendance at the chosen college,[FN1] that he had violated the agreement by failing to contribute to the child's college costs, and that the violation was not willful. The Support Magistrate declined the mother's request to impute income to the father, determined the amounts of both parties' incomes from their full-time employment, and ordered the father to pay 41% of the child's college expenses and the mother to pay 59%. The Support Magistrate granted the father a credit against his child support obligation in the amount of one third of his total $400 weekly obligation for 40 weeks of the year and thus directed him to pay $9,449.06 to the mother as his share of the total amount of $42,558.20 that she had paid by the time of trial for the cost of the child's first three semesters. The mother filed objections to the Support Magistrate's determinations, which Family Court denied. The mother appeals.
We turn first to Family Court's determination that the Support Magistrate properly found that the father's violation was not willful. "A separation agreement that is incorporated into, but does not merge with, a subsequent judgment of divorce is a legally binding, independent contract between the parties and is interpreted so as to give effect to the parties' intent" (Bell v Bell, 151 AD3d 1529, 1529 [2017] [citations omitted]; see Rainbow v Swisher, 72 NY2d 106, 109 [1988]; Matter of Dillon v Dillon, 155 AD3d 1271, 1272 [2017]). Here, the agreement "unequivocally demonstrates that the parties intended to encourage and facilitate the child's pursuit of a college degree and to make some financial contribution . . . toward that pursuit" upon their consent to a given school (Matter of Dillon v Dillon, 155 AD3d at 1273).
The mother testified that she kept the father informed of the colleges that the child was considering, told him promptly that the child had been accepted at the chosen college and then provided him with full information about that school's cost and the child's financial aid award. She repeatedly asked the father whether he consented to this college and how much he would contribute, but he gave only evasive responses.[FN2] She testified that the father never voiced any express objection to the chosen college; on the contrary, he participated in completing financial aid documentation for that school, responded, "[T]hat is great" when he was informed by email of the child's acceptance and paid $450 as half of the initial deposit without objection. Thereafter, however, he paid nothing more. The father testified that he did not consent to the chosen college because he could not afford it, but he acknowledged that he had never expressly stated that he did not consent to that school.
The record thus fully supports the finding that the father gave implied consent to the chosen college and, therefore, that he violated the agreement by failing to make a contribution to its cost commensurate with his ability to pay (see Matter of Heinlein v Kuzemka, 49 AD3d 996, 997-998 [2008]; Matter of Hartle v Cobane, 228 AD2d 756, 757 [1996]; Matter of Harp v McCann, 97 AD2d 868, 869 [1983]). We find no support in the law or the record for the determination that this violation was not willful (see Matter of Shkaf v Shkaf, 162 AD3d 1152, 1154 [2018]).
Family Court found support for the determination that the violation was not willful based upon the parties' disagreements about the father's consent and the amount of his contributions. First, we note that this determination was inconsistent with the finding that the father did consent to the chosen college. Further, it is well established that the determination of willfulness in this context is based solely upon "proof of both the ability to pay support and the failure to do so" (Matter of Powers v Powers, 86 NY2d 63, 68 [1995]; accord Matter of Nickerson v Bellinger, 258 AD2d 688, 688 [1999]). It has been repeatedly stated that, upon a prima facie showing of a willful violation of a support obligation, the burden shifts "'to the parent who owes the support to come forward with competent, credible evidence of his or her inability to pay,'" and failure to satisfy this burden requires a determination that the violation is willful (Matter of Shkaf v Shkaf, 162 AD3d at 1153, quoting Matter of Dench-Layton v Dench-Layton, 151 AD3d 1199, 1201 [2017]; see Matter of Powers v Powers, 86 NY2d at 69-70; Matter of Duprey v Klaers, 167 AD3d 1288, 1289 [2018]; Matter of Sayyeau v Nourse, 165 AD3d 1417, 1418 [2018]; Matter of Leder v Leder, 140 AD3d 1228, 1229 [2016]).
Here, willfulness was established on a prima facie basis by the mother's showing and the father's admission that he had failed to make anything more than a minimal contribution to the child's college costs. The father made no showing that he was financially unable to contribute; indeed, he testified that he had told the mother that he would pay up to $5,500 for the child's college costs. The Support Magistrate's finding that the father had the financial ability to contribute to the child's college education thus clearly required a finding that his failure to do so was willful (see Matter of Vincek-Breakell v Czizik, 155 AD3d 1384, 1385 [2017]; Matter of Grucci v Villanti, 108 AD3d 626, 627 [2013]; Matter of Walsh v Karamitis, 291 AD2d 749, 750 [2002]; see also Matter of Dillon v Dillon, 155 AD3d at 1273). We therefore find that the matter must be remitted to Family Court for a determination of the amount of the mother's mandatory award of counsel fees, not to be made by the same Support Magistrate who made the support determination at issue herein (see Family Ct Act §§ 438 [b]; 454 [3]; Matter of Shkaf v Shkaf, 162 AD3d at 1156; Matter of Warner v Monroe, 262 AD2d 684, 686 [1999]).
The mother next contends that Family Court erred in several respects in upholding the Support Magistrate's calculation of the father's income. We disagree with the mother's contention that the Support Magistrate should have taken the parties' financial assets into account for this purpose. Where, as here, "the parties expressly undertook an obligation to contribute toward the cost of the child's college education, but did not precisely define the extent of their obligations, Family Court should . . . proceed[] to consider the parties' financial means and ability to contribute and determine[] their respective obligations by assessing their pro rata shares of their combined parental income," as the Support Magistrate did here (Matter of Dillon v Dillon, 155 AD3d at 1273-1274; see Matter of Cohen v Rosen, 207 AD2d 155, 158 [1995], lv denied 86 NY2d 702 [1995]; see also Matter of Wheeler v Wheeler, 174 AD3d 1507, 1509 [2019]; Pistilli v Pistilli, 53 AD3d 1138, 1138-1139 [2008]).[FN3]
However, we agree with the mother that Family Court erred in denying her objection to the Support Magistrate's calculation of the father's income based upon his 2017 tax return, without imputing additional income to him. In this regard, the mother contends that the father earned substantial amounts from his side business as an electrician throughout the marriage, and that the parties planned to use these earnings to fund the children's college educations. She claimed that the father admitted to her after the divorce that the business continued to earn enough to fund the total cost of the child's education. She argued that the father's bank statements showed substantial unexplained cash deposits and purchases of electrical equipment, and she submitted a mortgage application signed by the father in December 2016 representing that the business earned $4,000 monthly and that the father's total annual earnings were $150,000. The mother served the father with a trial subpoena for his business records, but he did not comply. The mother further asserted that the father had intentionally decreased his income from his full-time employment, noting a decrease in his earnings from approximately $94,000 to approximately $82,000 in the year that the child entered college. She asserted that the father had consistently earned overtime pay throughout the marriage and thereafter until July 2017, and submitted payroll records demonstrating that the father's overtime payments abruptly stopped in the same week that the mother filed her enforcement petition.
The father denied these claims, asserting that his business earnings were accurately reflected in his tax returns, which showed losses in 2015 and 2016 and a profit of about $1,500 in 2017. He claimed that the income statements in the mortgage application were erroneous, testifying that the form was completed in his absence by the mortgage broker and that the father signed it hurriedly in a parking lot, without reviewing it or noticing the errors. The father admitted that he had failed to comply with the trial subpoena; he acknowledged that some of the requested records existed and offered no explanation for his failure to turn them over. Finally, he testified, without elaboration, that his salary had decreased because overtime work was no longer available to him.
"'[A] parent's child support obligation is determined by his or her ability to provide support, rather than the parent's current financial situation'" (Matter of D'Andrea v Prevost, 128 AD3d 1166, 1167 [2015], quoting Matter of Rubley v Longworth, 35 AD3d 1129, 1130 [2006], lv denied 8 NY3d 811 [2007]; accord Mack v Mack, 169 AD3d 1214, 1217 [2019]). A court is not bound by a parent's representations of his or her financial condition and may impute income when the record supports a finding that the parent has underreported earnings from a business (see Pfister v Pfister, 146 AD3d 1135, 1137 [2017]; Matter of Rubley v Longworth, 35 AD3d at 1130) or has voluntarily reduced his or her income (see Matter of Kelly v Bovee, 9 AD3d 641, 641-642 [2004]). Here, the Support Magistrate gave some credit to the mother's assertion that the father had failed to report his true business income on his tax returns, stating that "there certainly could be some merit in this contention," but nevertheless declined to impute business income to the father, stating that the mother had signed joint tax returns during the marriage that were "similar to [the father's] 2017 return." This determination has no support in the record. No joint tax returns were admitted into evidence, and there was no testimony as to the amounts of business income reported in the joint returns.[FN4] In any event, "the [mother] did not waive her right to challenge the [father's] claims regarding his annual income simply because she had previously signed joint tax returns" that reported a lower income (Harrington v Harrington, 93 AD3d 1092, 1093-1094 [2012]). In the interest of judicial economy, this Court will exercise its authority to review the record and make independent findings on this issue (see Kelly v Kelly, 140 AD3d 1436, 1438 [2016]).
The father's failure to reveal his business income by turning over the records that the mother requested is highly significant (see Matter of Covington v Boyle, 127 AD3d 1393, 1394-1395 [2015]). As a direct result, the only evidence on this issue is the father's tax returns for 2015, 2016 and 2017, his testimony that the business earned $350 monthly,[FN5] and his statement in the December 2016 mortgage application that it earned $4,000 monthly. While the father claimed that the mortgage document was in error, he initialed each page of the application and signed it under a statement averring that the information it contained was correct. Moreover, he did not produce any evidence that he had done anything to correct the alleged error. As previously noted, the Support Magistrate questioned the credibility of the father's claims regarding his business income, and this Court defers to such assessments (see generally Matter of Sayyeau v Nourse, 165 AD3d at 1419).[FN6] Under these circumstances, and assuming that the amount of business income shown in the mortgage application may have been overstated,[FN7] we find that the record supports the imputation of $30,000 annually to the father as business income.
Turning to the issue of the decrease in the father's earnings from his full-time employment, his terse explanation that overtime suddenly became unavailable, unsupported by documentation from his employer or evidence that the father made efforts to replace the lost earnings, was inadequate (compare Spencer v Spencer, 298 AD2d 680, 680-681 [2002]). The father acknowledged that he consistently earned overtime before 2017 and likewise in more than half of the 31 weeks in 2017 before the mother filed her enforcement petition. The mother demonstrated that if the father had continued to earn overtime at the same rate throughout 2017, his income would have been approximately $89,000 — an amount relatively consistent with his earnings of approximately $92,000 and $94,000 in the two previous years. Based on the father's demonstrated earning capacity and employment history, we thus find it appropriate to impute a total income of $90,000 annually to him from his full-time employment (see Matter of Azrak v Azrak, 60 AD3d 937, 938-939 [2009]).
Accordingly, the father's total imputed income for the purpose of determining his share of the child's college costs is $120,000. The Support Magistrate determined that the mother's 2017 income for this purpose was $121,856.[FN8] Thus, each party's share of the support obligation is 50%, and the father's share of the total cost of $42,558.20 for the child's first three semesters is $21,279.10.
Next, Family Court erred in finding that the Support Magistrate properly credited one third of the father's total child support obligation over 40 weeks against his annual share of the child's college costs. The Support Magistrate incorrectly found that the agreement "entitled" the father to such a credit; instead, it merely provided that the father's child support payments should be "take[n] into consideration" in determining the parties' obligations to share college costs. "In the absence of specific contractual language, the availability and amount of such a credit depend upon the facts and circumstances in the particular case, taking into account the needs of the custodial parent to maintain a household and provide certain necessaries" (Matter of Apjohn v Lubinski, 114 AD3d 1061, 1064 [2014] [internal quotation marks, brackets and citation omitted], lv denied 23 NY3d 902 [2014]; see Matter of Covington v Boyle, 127 AD3d at 1395). The child continued to reside in the mother's home during school vacations and weekend visits. The mother thus remained obliged to maintain a household for the child, and also continued to cover other expenses that do not abate during the college year, such as clothing, supplies and the child's car insurance. Moreover, since the purpose of a child support credit against college costs is to avoid duplication, it covers "only those expenses associated with the child's room and board, rather than college tuition" (Ayers v Ayers, 92 AD3d 623, 625 [2012]; see Matter of Haessly v Haessly, 203 AD2d 700, 702 [1994]). No such allocation was made here, nor does the record reveal whether the child's financial aid covered any part of her room and board expenses (see Matter of DelSignore v DelSignore, 133 AD3d 1207, 1208 [2015]). Accordingly, we find that no credit is necessary (see Matter of Wheeler v Wheeler, 174 AD3d at 1510; Matter of Covington v Boyle, 127 AD3d at 1395; Matter of Haessly v Haessly, 203 AD2d at 702-703).
Family Court did not err in dismissing the mother's modification petition, which sought a de novo calculation of the parties' support obligations. The separation agreement provided that the parties "ha[d] standing" to seek modification of the father's child support obligation upon, among other things, a showing of a substantial change in circumstances or a change of 15% in either party's gross income. The mother asserted that, among other things, the father had moved out of the marital residence, and that her income had increased more than 15%. The Support Magistrate rejected the mother's claims on the grounds that she had not shown a substantial change in circumstances and that only the mother's income had increased, while the father's income had decreased. We agree with the mother that the second determination was not consistent with the parties' agreement, which gave the parties standing to request a modification based upon a 15% change in "either" party's income. However, "[a] party seeking modification of a child support provision derived from an agreement or stipulation incorporated but not merged into a divorce decree has the burden of proving that the agreement was unfair or inequitable when entered into or that an unanticipated and unreasonable change of circumstances has occurred resulting in a concomitant increased need or that the needs of the child[] are not being adequately met" (Matter of Sidoti v Sidoti, 41 AD3d 944, 944-945 [2007] [internal quotation marks and citation omitted]; accord Matter of Overbaugh v Schettini, 103 AD3d 972, 973 [2013], lv denied 21 NY3d 854 [2013]). Nothing in the language of the agreement indicates that the parties intended to deviate from this well-established standard by requiring a de novo calculation of child support whenever a party's income changed by 15%.[FN9] As the mother did not make the requisite showing, the modification petition was properly dismissed. The mother's remaining arguments have been reviewed and found to be without merit.
Mulvey, Devine, Pritzker and Colangelo, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as computed respondent's income for purposes of his contribution to college costs, granted respondent a credit against his child support obligation, and determined that respondent's violation was not willful; increase respondent's percentage share of college costs to 50%, increase respondent's obligation to reimburse petitioner for arrearages for college costs to $21,279.10, and matter remitted to the Family Court of Saratoga County for a calculation of counsel fees owed to petitioner; and, as so modified, affirmed.



Footnotes

Footnote 1: The Support Magistrate further found that if the father had not consented, such refusal would have been unreasonable.

Footnote 2: She alleged that the father made verbal statements to the effect that he supported the child's attendance at the chosen college but refused to commit them to writing. The father denied this claim.

Footnote 3: The Support Magistrate did take the father's financial assets into account in determining that he was financially capable of contributing to the child's college costs.

Footnote 4: The mother testified that she became concerned about the veracity of the father's business tax returns in 2013, signed the parties' joint return in that year with misgivings, and thereafter refused to file jointly. Due to these concerns, she negotiated a provision in the separation agreement providing that she waived all interest in the business and requiring the father to indemnify her for any business liabilities.

Footnote 5: The father did not explain the discrepancy between this testimony and the lower income, or losses, shown on his tax returns.

Footnote 6: The Support Magistrate also questioned the father's credibility on another financial issue, noting that he had "neglected to mention" a pension asset of approximately $168,000 in his financial disclosure documents and had acknowledged its existence only after it was raised on cross-examination.

Footnote 7: The mortgage application overstates the amount of the father's income from his full-time employment, indicating an annual income of $102,000 when his 2016 tax return stated an income of $93,776.

Footnote 8: The Support Magistrate excluded approximately $8,300 that the mother took as an early IRA distribution to cover part of the child's college costs.

Footnote 9: Notably, the statute upon which the modification provision was based provides that support "may" be modified upon a showing that a party's income has changed by 15% (Family Ct Act § 451 [3] [b] [ii] [emphasis added]).