Weaver v Weaver (2021 NY Slip Op 05755)





Weaver v Weaver


2021 NY Slip Op 05755


Decided on October 21, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:October 21, 2021

531541
[*1]Stanton E. Weaver, Appellant,
v
Mary E. Weaver, Respondent.

Calendar Date:September 14, 2021

Before:Garry, P.J., Aarons, Pritzker, Reynolds Fitzgerald and Colangelo, JJ.

Stanton E. Weaver, Canajoharie, appellant pro se.
Becker, Glynn, Muffly, Chassin & Hosinski LLP, New York City (William H. Newman of counsel) and Pro Bono Appeals Program, Buffalo (Johnathan S. Reiner of counsel), for respondent.



Reynolds Fitzgerald, J.
Appeals (1) from an order of the Supreme Court (Tomlinson, J.), entered March 12, 2020 in Fulton County, which, among other things, (a) denied plaintiff's motion for leave to renew and, upon reargument, adhered to its prior finding, and (b) granted defendant's motion for enforcement of the provision in the judgment of divorce regarding plaintiff's pension, and (2) from an order of said court, entered May 26, 2020 in Fulton County, which granted defendant's motion for counsel fees.
The parties were married in April 1998 and have one child (born in 2003). In September 2017, plaintiff (hereinafter the husband) brought an action for divorce against defendant (hereinafter the wife). On the day of trial, the parties placed an opting out agreement on the record, which settled matters concerning spousal maintenance, child support and distribution of personal and real property. In December 2018, Supreme Court (Skoda, J.) granted a judgment of divorce that incorporated, but did not merge, the agreement.
The agreement provided, as relevant here, that the husband was entitled to stay in an apartment located at the matrimonial residence for six months, at $500 per month, with proration of said rent and refund of any overpayment to the husband on the event of his relocation. It further provided that the wife was entitled to 50% of the marital portion of the husband's pension benefits based on the Majauskas formula. To that end, the agreement directed that the wife submit a qualified domestic relations order (hereinafter QDRO) and, upon the employer's approval of said QDRO, that the husband immediately make application for his pension. As to the husband's monthly support obligations, the agreement directed specified sums for spousal maintenance and child support from November 10, 2017 through March 1, 2018, at which point the obligations would increase. Lastly, the agreement acknowledged that the husband's maintenance and child support obligations would require revision after December 19, 2018, the date on which the husband's full salary would come to an end and the husband would receive either his disability pension and/or long-term disability benefits. However, the agreement specifically provided that the husband would continue to make payments in the amounts stated in the agreement until new amounts had been agreed to by the parties or court intervention.
By order to show cause dated January 2019, the husband, who was self-represented,[FN1] sought possession of a snowblower and gas grill, as well as reimbursement of snow removal expenses incurred by him. The wife opposed the husband's order to show cause and cross-moved for arrears, claiming that the husband failed to pay court-ordered child support and spousal maintenance. The wife further sought reimbursement for expenses to remove or dispose of property that the husband left behind when he vacated the apartment and sought counsel fees pursuant to Domestic Relations Law §§ 237 (b) and 238. During [*2]ensuing oral argument on the motions, the husband raised a new claim for a rent refund, based on prorating the rent to December 8, 2018 — the date he claimed he vacated the apartment.
By October 2019 order, Supreme Court (Tomlinson, J.) awarded the wife the snowblower and the gas grill and denied the husband's request for reimbursement of snow removal expenses and a refund of the rent. The court further determined that the husband owed the wife spousal maintenance and child support arrears. Lastly, the court awarded the wife counsel fees.
The husband subsequently moved for leave to renew and/or reargue, particularly challenging the denial of the rent refund, calculation of maintenance and child support arrears and the award of counsel fees. The wife cross-moved for counsel fees and related costs, as well as sanctions against the husband based upon his alleged frivolous conduct. Meanwhile, the wife filed an order to show cause dated December 2019, seeking, among other things, to enforce the terms of the divorce judgment by directing the husband to immediately apply for his disability pension, as well as counsel fees. The husband opposed the wife's order to show cause.
In a March 2020 order, Supreme Court denied the husband's motion to renew and/or reargue in its entirety and granted the wife's show cause application to require the husband to immediately apply for his disability pension, and further granted the wife's request for counsel fees, subject to a future hearing. In May 2020, following said hearing, Supreme Court awarded the wife counsel fees and disbursements in the sum of $7,590.50. The husband appeals from both the March 2020 and May 2020 orders.
Although CPLR 2221 (f) provides for a combined motion for leave to reargue and leave to renew, the requirements for a motion to reargue (see CPLR 2221 [d]) and a motion to renew (see CPLR 2221 [e]) are distinct, and, as such, each item of relief sought is to be identified and supported separately (see CPLR 2221 [f]).[FN2] "A motion for leave to renew shall be based upon new facts not offered on the prior motion that would change the prior determination and shall contain reasonable justification for the failure to present such facts on the prior motion" (Wright v State of New York, 192 AD3d 1277, 1278 [2021] [internal quotation marks, ellipsis and citations omitted]; see CPLR 2221 [e] [2]). To succeed on a motion to reargue, a party must demonstrate that the court "overlooked or misapprehended the facts and/or the law or mistakenly arrived at its earlier decision" (Matter of Reed v Annucci, 175 AD3d 1700, 1701 [2019] [internal quotation marks and citation omitted]; see CPLR 2221 [d] [2]).
A perusal of the record confirms that the husband failed to present any new facts in support of this motion and, as such, despite its designation as a combined motion, it is, in fact, exclusively a motion to reargue (see DeMaille v State of New York, 166 AD3d 1405, 1408 [2018]). "Although, generally[*3], no appeal lies from an order denying a motion to reargue, where the court actually addresses the merits of the moving party's motion, we will deem the court to have granted reargument and adhered to its prior decision — notwithstanding language in the order indicating that reargument was denied" (Matter of Manufacturers & Traders Trust Co. v J.D. Mar. Serv., 187 AD3d 1249, 1251 [2020] [internal quotation marks and citations omitted]; see Rodriguez v Jacoby & Meyers, LLP, 126 AD3d 1183, 1184 [2015], lv denied 25 NY3d 912 [2015]). A review of the March 2020 order reveals that, although Supreme Court noted the husband's defects and deficiencies in his unsworn pleadings and stated that it was denying the motion, the court did consider and address his arguments. As such, the March 2020 order is appealable as of right (see CPLR 5701 [a] [2] [viii]; Matter of Aydden OO. [Joni PP.], 180 AD3d 1208, 1208-1209 [2020], lv dismissed 35 NY3d 996 [2020]).
Turning to the merits, the husband claims that he is entitled to a refund of the rent as he left the apartment at a certain date and any items left behind were mere detritus and do not constitute "occupancy" for rental purposes. By its October 2019 order, Supreme Court determined this issue, resulting in an unfavorable outcome to the husband. "A motion for leave to reargue pursuant to CPLR 2221 is . . . not designed to afford an unsuccessful party successive opportunities to reargue issues previously decided" (Matter of Mayer v National Arts Club, 192 AD2d 863, 865 [1993]). In other words, it does not afford another bite of the apple.
Next, in reference to Supreme Court's determination pertaining to child support, spousal maintenance and arrears, the husband disputes the amounts, alleges calculation errors and requests certain credits and refunds. As the husband failed to set forth how Supreme Court overlooked or misapprehended the facts or law or mistakenly arrived at its earlier decision, we find that Supreme Court properly adhered to its original determination (see Galway Co-Op.Com, LLC v Niagara Mohawk Power Corp., 171 AD3d 1283, 1284 [2019]; Cheney v Cheney, 86 AD3d 833, 838 [2011]). Moreover, a review of the record reveals that, when the agreement was read into the record, the parties agreed that "[t]he amounts set forth on the record for child support are represented from [the parties'] perspectives to be consistent with the presumptive applications of and obligations under the Child Support Standards Act," and that it is "the expectation that the amounts paid were compliant with the post-judgment maintenance guidelines. . . . So to the extent some higher court some day on an appeal found that the maintenance may have not been perfectly compliant, the parties are comfortable with that." Finally, when referencing how to recalculate support, the parties agreed "that[,] to the extent any income might exceed the statutory cap[,] there still will be no argument relative to that[,] and child support [*4]will be calculated on income both below and above the statutory cap according to the child support percentages." The record supports Supreme Court's determination that the parties waived future litigation as to the calculation of child support and maintenance in their agreement, including any miscalculation of these obligations (see Lurie v Lurie, 101 AD3d 1429, 1430 [2012], lv dismissed and denied 21 NY3d 956 [2013]).
The husband next contends that Supreme Court incorrectly determined that he was required to immediately apply specifically for his disability pension, as opposed to his retirement pension.[FN3] An agreement "that is incorporated into, but does not merge with, a subsequent judgment of divorce is a legally binding, independent contract between the parties and is interpreted so as to give effect to the parties' intent" (Bell v Bell, 151 AD3d 1529, 1529 [2017]; accord Siouffi v Siouffi, 177 AD3d 1206, 1207 [2019]). "If the contract is clear and unambiguous on its face, the intent of the parties must be gleaned from within the four corners of the instrument, and not from extrinsic evidence" (Siouffi v Siouffi, 177 AD3d at 1207 [internal quotation marks and citations omitted]; see Desautels v Desautels, 80 AD3d 926, 928 [2011]. "In discerning the parties' intent, courts are not limited to the literal language of the agreement, but may consider whatever may be reasonably implied from that literal language" (Matter of Dillon v Dillon, 155 AD3d 1271, 1272 [2017] [internal quotation marks and citations omitted]).
Here, the parties agreed "that [the wife] will receive her Majauskas share of the pension benefits pursuant to a shared interest division of the pension. It's the expectation and hope that [the parties] will prepare a [QDRO]. . . . Once that [QDRO] is . . . approved by [Supreme Court] . . . it will be entered and served on [the husband's employer]. Once [the employer] has approved that [QDRO,] [the husband] will immediately make application for his pension. . . . The parties have agreed that [the wife] will be entitled to [50%] of the marital portion of the pension." The agreement further provided that "[the wife] will receive any enhancements or supplements to the pension . . . with the only exception being the disability supplement that is being provided to [the husband,] which is defined in the summary plan description provided by [the husband's employer]. . . . It's the expectation . . . that [the husband] will elect a pre-retirement survivor death benefit or survivor option such that should he die before he elects to commence and receives his pension benefit, [the wife] will receive her marital share of that pre-retirement death benefit and the marital share. . . . It is the expectation and understanding that [the husband's employer] will accept a security of the marital share. [The husband] will also elect and it will be in the [QDRO] that [the wife] will be named as the post-retirement survivor death benefit to the [*5]extent of her marital share[, s]uch that[,] should [the husband] predecease her in retirement[,] she will continue to receive her marital share of the pension for the remainder of her life."
Again, a review of the record establishes that, at the time of the agreement, the husband was not old enough to qualify for his regular pension, but was suffering from cancer, and that his death prior to retirement would bar the wife from receiving any pension benefits. As such, Supreme Court properly found that the parties intended the husband to immediately apply for his disability pension benefits (see Siouffi v Siouffi, 177 AD3d at 1208; Matter of Drake v Drake, 114 AD3d 1119, 1121-1122 [2014]).
The husband finally contends that Supreme Court's award of counsel fees to the wife was in error. "Domestic Relations Law § 238 authorizes courts to make discretionary awards of counsel fees upon enforcement motions, and Domestic Relations Law § 237 (c) mandates such an award upon a determination that a party's failure to obey an order compelling payment of a distributive award was willful" (Seale v Seale, 154 AD3d 1190, 1196 [2017]). "[T]he statute contains a rebuttable presumption that counsel fees shall be awarded to the less monied spouse" (Momberger v Momberger, 103 AD3d 971, 972 [2013]). "In exercising its discretionary power to award counsel fees, a court should review the financial circumstances of both parties together with all the other circumstances of the case, which may include the relative merit of the parties' positions" (Curley v Curley, 195 AD3d 1183, 1185 [2021] [internal quotation marks, brackets and citations omitted]).
The record reflects that Supreme Court found the wife successful on the merits of her motions, determined that the wife was the less monied spouse — given her limited income and nonliquid assets as compared to the husband's guaranteed sources of income and his liquid assets — and determined that the litigation was protracted and prolonged by the husband's self-representation such that counsel fees were necessitated in defending and protecting her interests from the husband's actions and inactions. Our review reveals that due consideration was given to appropriate factors and, accordingly, we perceive no abuse of discretion in the award or amount of counsel fees (see Matula v Matula, 159 AD3d 1074, 1076 [2018]; Kimberly C. v Christopher C., 155 AD3d 1329, 1336 [2017]. As to the husband's request for counsel fees, as he is a self-represented litigant, his application is denied (see Kay v Ehrler, 499 US 432, 438 [1991]; Federal Natl. Mtge. Assn. v Johnson, 177 AD3d 1148, 1149 [2019]).
Garry, P.J., Aarons, Pritzker and Colangelo, JJ., concur.
ORDERED that the orders are affirmed, without costs.



Footnotes

Footnote 1: The husband was represented by counsel throughout the initial divorce action.

Footnote 2: Clearly, such identification and differentiation were not accomplished here. However, contrary to the wife's assertions, this omission does not preclude relief as we afford the husband leeway given his self-represented status (see Ressis v Herman, 122 AD2d 516, 517 [1986], appeal dismissed 69 NY2d 1017 [1987]).

Footnote 3: Although the wife asserts that the husband lacks standing to appeal this contention because he is not aggrieved, "a party is aggrieved when a court grants relief, in whole or in part, against such party and such party had opposed the requested relief" (Matter of Dolomite Prods. Co., Inc. v Town of Ballston, 151 AD3d 1328, 1331 [2017]). Here, the husband opposed applying immediately for his disability pension and Supreme Court found against him. However, as to the husband's request to bar the wife from communicating with him about the disability pension, this relief has been raised for the first time on appeal and may not be considered by this Court (see CPLR 5501; Matter of Doe v Skidmore Coll., 152 AD3d 932, 933 n 1 [2017]).