Martin v Martin (2022 NY Slip Op 02840)

Martin v Martin

2022 NY Slip Op 02840

Decided on April 28, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 28, 2022

532482
[*1]Augusta Martin, Respondent,
v
Raymond Martin, Appellant.

Calendar Date:March 21, 2022

Before:Garry, P.J., Pritzker, Reynolds Fitzgerald, Ceresia and Fisher, JJ.

Wardlaw Associates, PC, Saratoga Springs (Donna E. Wardlaw of counsel), for appellant.
Carola, Bagnoli & Tollisen, PLLC, Mechanicville (Gerald A. Thompson Jr. of counsel), for respondent.

Garry, P.J.
Appeals (1) from an order of the Supreme Court (Pelagalli, J.), entered March 9, 2020 in Saratoga County, which, among other things, denied defendant's motion to reject plaintiff's appraisal of the former marital home, and determined its value, and (2) from an order of said court, entered March 19, 2021 in Saratoga County, which partially granted plaintiff's motion to, among other things, direct defendant to pay plaintiff for her share of the former marital home.
The parties' 2012 judgment of divorce incorporated, but did not merge, a settlement agreement. In relevant part, this agreement granted defendant (hereinafter the husband) the right to purchase from plaintiff (hereinafter the wife) her interest in the former marital home located on lakefront property in Saratoga County. The agreement provided that, within a specified time after the husband's election of that option, the parties would obtain three appraisals and the husband would pay the wife half the mean of those three appraised values, minus a commission. In December 2015, the husband notified the wife that he intended to purchase her interest. He obtained two appraisals of the property, one prepared by Thomas Jacques and another by William Moore. In April 2019, upon the husband's motion, Supreme Court, among other things, accepted the two appraisals that the husband obtained in 2015 and directed the wife to promptly obtain a third appraisal with a valuation date between December 12, 2015 and January 10, 2016. The wife then submitted an appraisal prepared by James Zasada, who set a significantly higher value for the property in an amount roughly twice the value set by the first and second appraisals.[FN1] In connection with a mortgage application to purchase the wife's interest, the husband obtained another appraisal prepared by Julie Moore; she opined that the value of the property, as of December 31, 2015, was at a stated sum lying between the values stated within the first and second appraisals.
The husband moved to, among other things, set aside the Zasada appraisal and instead use the Julie Moore appraisal as the parties' third and final appraisal under the agreement. In March 2020, Supreme Court denied the husband's motion, finding that three appraisals from licensed appraisers — William Moore, Jacques and Zasada — had been submitted in accordance with the plain text of the agreement. The court established the value of the property based upon the mean of these appraisals. The wife subsequently moved, as relevant here, to enforce the judgment of divorce by ordering the husband to pay for her share of the property based on that value and to hold him in contempt for failing to make such payment. In March 2021, the court refused to hold the husband in contempt but ordered him to pay the wife the cost of purchasing her share of equity in the property based upon the value determined by the terms of the agreement. The husband appeals from the March 2020 and March 2021 orders[*2].
As "[a] separation agreement is a legally binding and enforceable contract, subject to ordinary principles of contract construction and interpretation," where such an agreement "is clear and unambiguous on its face, the parties' intent must be discerned from the four corners of the document," although "courts are not limited to the literal language of the agreement, but may consider whatever may be reasonably implied from that literal language" (Matter of Dillon v Dillon, 155 AD3d 1271, 1272 [2017] [internal quotation marks and citations omitted]; see Weaver v Weaver, 198 AD3d 1140, 1144-1145 [2021]; Siouffi v Siouffi, 177 AD3d 1206, 1207 [2019]). The relevant portion of the agreement states that "the parties . . . shall obtain three (3) appraisals, from licensed appraisers, and the arithmetic mean of these appraisals shall be considered the fair market value of the premises." The agreement specifically requires appraisals from licensed appraisers. The parties do not appear to dispute that William Moore, Jacques and Zasada were licensed by New York. Each of those individuals submitted a report asserting that he appraised the property and opining as to its value in December 2015. Under the literal language of the agreement, the fair market value of the property shall be determined by computing the mean of those appraisals.
However, as noted above, courts may also consider what is reasonably implied by the agreement's language (see Weaver v Weaver, 198 AD3d at 1144-1145; Siouffi v Siouffi, 177 AD3d at 1207; Matter of Dillon v Dillon, 155 AD3d at 1272). Pursuant to Executive Law article 6-E, the Board of Real Estate Appraisal adopts regulations establishing standards for appraisals and prescribing the form and content of appraisal reports (see Executive Law § 160-d [1] [d]; [2], [3]). Under these regulations, every appraisal by a certified or licensed real estate appraiser must comply with the provisions and standards set forth in the Uniform Standards of Professional Appraisal Practice (hereinafter USPAP) (see 19 NYCRR 1106.1 [a]), a document "published by the Appraisal Foundation, which is authorized by the United States Congress as the source of appraisal standards" (19 NYCRR 1106.1 [b]). Thus, a reasonable implication of the agreement is that the parties, by specifying that the appraisers be licensed, intended for the appraisers to comply with appraisal standards mandated for state licensed and certified appraisers (see Corrigan v Breen, 241 AD2d 861, 863 [1997]; compare Liebowitz v Liebowitz, 189 AD3d 627, 628 [2020]; Grosz v Serge Sabarsky, Inc., 24 AD3d 264, 266 [2005]).[FN2]
In support of his motion, the husband submitted affidavits from appraisers William Moore, Julie Moore and Michael Colino, asserting that Zasada's report failed to comply with USPAP standards and supporting their assertions with specific examples. The husband also submitted the affidavit testimony of himself and his girlfriend disputing information and statements [*3]that Zasada included in his report, based upon their personal observations of Zasada during his inspection and their knowledge of the property. Moreover, there are statements within Zasada's affidavit that appear to contradict some of the sworn statements in his report.[FN3]
Initially, the husband failed to establish that Zasada's report was tainted by fraud or that his appraisal was not performed in good faith. Nonetheless, based upon the conflicting affidavits, we find that a hearing on the limited factual issue posed was required before deciding the motion (see CPLR 2218; Dupigny v St. Louis, 115 AD3d 638, 640 [2014]; Matter of Harrell v Fischer, 114 AD3d 1092, 1092-1093 [2014]). If it is established that Zasada did not substantially comply with the mandatory USPAP standards (see 19 NYCRR 1106.1 [a]), his appraisal should not be considered as one of the three appraisals required by the parties' agreement. However, if the court determines following this hearing that Zasada substantially complied with USPAP standards in compiling his appraisal report and reaching an opinion on the value of the property, his appraisal should be considered along with those of Jacques and William Moore, and the husband must pay the wife to purchase her share of equity in the property based upon the mean of those three appraisals.[FN4]
Pritzker, Reynolds Fitzgerald, Ceresia and Fisher, JJ., concur.
ORDERED that the order entered March 9, 2020 is modified, on the law, without costs, by reversing so much thereof as set the value of the marital residence at the specified sum; matter remitted to the Supreme Court for a limited hearing consistent with this Court's decision; and, as so modified, affirmed.
ORDERED that the order entered March 19, 2021 is modified, on the law, without costs, by reversing so much thereof as granted plaintiff's request for an order compelling defendant to pay her the previously established sum for her share of the equity in the marital home, and, as so modified, affirmed.

Footnotes

Footnote 1: Although there are references in the report to a slightly lower value, the greater portion of the report, together with Zasada's affidavit, confirm his intended appraised value.

Footnote 2: There is a distinction between state certified real estate appraisers and state licensed real estate appraisers (see e.g. Executive Law §§ 160; 160-a [6] [a], [b]; 160-b [1]; 160-h); certified appraisers have met higher training standards.

Footnote 3: For example, Zasada's report states that it is based on a complete visual inspection of the interior and exterior areas of the property, although there is a notation that his assistant assisted with the inspection. In his affidavit, Zasada states that he was able to personally view most of the outside of the property and the main floor of the house, but health issues prevented him from viewing the remainder of the house and the unattached cottage, which his assistant inspected. The husband and his girlfriend averred that Zasada's personal inspection was even more limited.

Footnote 4: We note that Zasada's use of a comparable sale that occurred after the valuation date does not necessarily support the conclusion that he failed to value the property on the correct date. Some of the husband's appraisers acknowledged that an appraiser can, in some circumstances, rely on a later-sold comparable; whether it was appropriate for Zasada to do so here thus appears to also pertain to whether he complied with USPAP standards, not whether he used the correct valuation date.